# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3079

_____

William J. Sprenger,

        Appellant,

v.

Federal Home Loan Bank of
Des Moines,

        Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the Southern
\*   District of Iowa.
\*
\*
\*
\*

_____

Submitted: April 13, 2001

Filed: June 15, 2001

_____

Before BYE and BEAM, Circuit Judges, and NANGLE,[1] District Judge.

_____

BEAM, Circuit Judge.

      William Sprenger filed suit against his employer, the Federal Home Loan Bank of Des Moines (the "Bank"), alleging age discrimination, disability discrimination, and

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

retaliation. The district court[2] granted the Bank's motion for summary judgment on all claims. Sprenger appeals, and we affirm.

## I.

We recount the facts in a manner most favorable to Sprenger. In January 1992, the Bank hired Sprenger, then aged fifty-two, to work as vice president of correspondent banking. In 1999, his title changed to vice president/field sales representative, a position he continues in today. Other similarly situated officers hired at the same time ranged in age from forty-one to fifty-six. In his position, Sprenger sells loans to member banks. He receives a base salary, incentive bonuses and commissions. With annual raises his base salary grew from $75,000 in 1992 to $85,791.58 in 1996. His total compensation reached $114,561.24 in 1998.

The Bank's employee handbook stated that raises were not tied to a specific timetable, but rather were to be awarded based on an employee's performance appraisal, the position of an employee's salary within the applicable salary range, and the time elapsed since the employee's last raise. The Bank published a "Proposed Salary Increase Guide" (the "Guide"), plotting these factors against each other and suggesting when a raise might be appropriate. The handbook identified performance appraisals as the key factor in receiving a raise and provided that an appraisal should occur at least once every eighteen months. Each of Sprenger's raises followed a performance review.

A performance review included the completion of a performance appraisal form on which a manager could review an employee across six "Principal Accountabilities" and five "Factors Affecting Performance," and could also assign the employee an

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

overall performance grade. In each area an employee could earn one of four grades: "unsatisfactory;" "acceptable but needs improvement;" "expected;" and "significantly exceeds expectations." The appraisal form presented the possible grades for each category along a bar grid, permitting the reviewer to indicate where within each level the assigned grade fell (i.e., "expected" but close to "significantly exceeding expectations," as opposed to "expected" but close to "acceptable but needs improvement"). The form also provided space for written comments. Sprenger received evaluations each year. During the relevant years, those reviews were completed by two different supervisors, Greg VanGilder and Steve Jordan, and were also signed by Bank President Thurman "Sam" Connell.

In late 1996, Sprenger was diagnosed with peripheral neuropathy, a degenerative condition that can curtail a person's ability to engage in physical activity. In January 1997, Sprenger disclosed his condition to the Bank's human resources director, Steve Hansen. VanGilder, then Sprenger's supervisor, asked Sprenger what percentage he was disabled, and also whether he had considered disability retirement. VanGilder was concerned, in part, because driving a vehicle was an integral part of Sprenger's job.

VanGilder reviewed Sprenger in February 1997. VanGilder graded him "needs improvement" in three Principal Accountabilities areas: (1) soliciting customers, (2) developing marketing concepts for the Bank, and (3) developing and presenting sales concepts for member Banks. VanGilder also graded Sprenger as "needs improvement" in Administrative Skills and gave him low "expected" ratings for the other Factors Affecting Performance. VanGilder's written comments suggested Sprenger needed to improve presentation-planning and to better use available technology. Nevertheless, VanGilder recommended that Sprenger receive a raise, as suggested by the Guide. Bank President Connell, however, in consultation with Hansen, decided against the raise. In a memo to VanGilder, Hansen suggested that withholding a raise would be an effective tool for getting Sprenger's attention, in light of the performance review. Instead of a raise, Hansen and VanGilder set three performance goals for Sprenger to

be reviewed after six months.  If Sprenger showed adequate improvement, Hansen wrote he would recommend Sprenger for a raise.

The Bank reviewed Sprenger again in December 1997.  This review graded him as borderline between "needs improvement" and "expected" on the areas highlighted in the February review.  The evaluation did note some improvement and rated him "expected" overall.  VanGilder drafted a memo to Sprenger's file concluding Sprenger had met two of the three performance goals set for him, but noted the need for continued improvement in call-planning and organization.  After this evaluation, the Bank again declined to award Sprenger a raise.  Following the December evaluation, VanGilder retired and Steve Jordan became Sprenger's manager.

In a letter to Connell, dated February 27, 1998, Sprenger expressed dissatisfaction with the review process, accused management of bad faith, and stated that he had been singled out for non-performance related issues.  Connell responded in a memorandum addressing Sprenger's concerns.  In March, Sprenger's counsel demanded that Connell cease all discrimination and retaliation against Sprenger. Sprenger then filed discrimination charges with the Missouri Commission on Human Rights in June 1998, with the EEOC in July 1998, and with the Iowa Civil Rights Commission in November 1998.

In September 1998, Jordan reviewed Sprenger's performance.  Jordan rated him as "needs improvement" in developing marketing concepts for the Bank, and in working with co-workers to develop, price and implement new products and services.  Jordan gave him this same rating for Job Knowledge, Administrative Skills and Other Job Related Activities.  Jordan rated Sprenger overall as "needs improvement."  Jordan's written comments suggested Sprenger was not adequately utilizing planning software and other technical applications.  After this evaluation, the Bank again failed to give Sprenger a raise.

-4-

Jordan and Sprenger met in September to go over the evaluation. Sprenger disputed Jordan's assessment of his abilities. Jordan agreed to go over it again, and commented: "There are some attitudes that need to be changed in Des Moines." In a telephone conversation a few days later, Jordan told Sprenger, with regard to his pending evaluation, to "play the game." In October, the Bank asked Sprenger to report to Des Moines where he was asked to undergo an assessment of his computer skills. Sprenger characterizes this as an "ambush test." Sprenger took the assessment and passed with flying colors. Two months later, Sprenger received a revised appraisal in which Jordan rated him overall as "expected," and gave him "expected" ratings in every area except one in which he received a grade of "significantly exceeds expectations." After this evaluation, Sprenger received a 4.2% pay raise.

Sprenger filed this action in January 1999. He accused the Bank of denying him three raises in a row, which he characterized as "unprecedented." He alleged that in doing so, the Bank discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act, and on the basis of disability, in violation of the Americans with Disabilities Act. Sprenger also accused the Bank of retaliation, and raised various state law claims. The district court found Sprenger adequately raised a prima facie case of age discrimination, but that he failed to create a genuine question of material fact as to whether the Bank's rationale for its conduct was pretextual or whether the Bank actually engaged in age discrimination. The district court also found that Sprenger failed to prove a prima facie case of either disability discrimination or retaliation.[3] Based on these findings, the district court awarded the Bank summary judgment on all claims.

---

[3]The district court addressed Sprenger's state law claims under the same rubric as his federal claims. Sprenger does not appeal these claims separately.

II.

We review the district court's award of summary judgment de novo. Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir. 1997). Such is appropriate only when the evidence indicates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the non-moving party, Sprenger is entitled to all reasonable inferences–those that "can be drawn from the evidence without resort to speculation." Kincade v. U.S. Elec. Motors, Inc., 219 F.3d 800, 801 (8th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). As regards the pretext inquiry specifically, "to survive summary judgment, [the plaintiff] must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions." Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 717 (8th Cir. 2000), cert. denied, 121 S. Ct. 775 (2001).

Sprenger's claims are all subject to the well-worn burden-shifting mechanism of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 931 (8th Cir. 2000) (age discrimination); Allen v. Interior Constr. Serv., Ltd., 214 F.3d 978, 981 (8th Cir. 2000) (disability discrimination); Scott v. County of Ramsey, 180 F.3d 913, 917 (8th Cir. 1999) (retaliation). Under this framework, the employee must first establish a prima facie case of illegal discrimination. Id. It then falls to the employer to promulgate a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993). The burden then shifts back to the employee who must either introduce evidence to rebut the employer's justification as a pretext for discrimination, or introduce additional evidence proving

-6-

actual discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2109 (2000).[4]

The burden-shifting mechanism reflects in part the expediency of having an employer explain an adverse employment action.  Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 665 (6th Cir. 2000).  Accordingly, a prima facie case requires only a minimal showing before shifting the burden to the employer.  St. Mary's Honor Center, 509 U.S. at 506.  An employee's attempt to prove pretext or actual discrimination requires more substantial evidence, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification.  See, e.g., Stuart v. General Motors Corp., 217 F.3d 621, 635-36 (8th Cir. 2000) (concluding that proof possibly sufficient to establish a prima facie case was insufficient to establish pretext).  A court may therefore conclude that in light of the employer's non-discriminatory rationale, the plaintiff's evidence does not permit a reasonable inference of discrimination.  The question at this stage is whether Sprenger raised a genuine question of material fact at any of the burden-shifting steps.

A.

We start with the age discrimination claim.  The parties do not dispute whether Sprenger established a prima facie case nor whether the Bank articulated a legitimate, non-discriminatory rationale.  We therefore move directly to the third stage of the

---

[4]Sprenger argues the district court incorrectly required him to prove "pretext-plus," that is to prove both that the Bank's stated justification for its actions was pretextual, and also to introduce additional evidence proving discrimination.  The district court, however, correctly ruled that Sprenger could prevail upon proof of *either* pretext or discrimination.  In Reeves, 120 S. Ct. at 2109, the Supreme Court ruled that evidence establishing a prima facie case plus proof of pretext could, *but did not necessarily*, establish liability.

burden-shifting scheme.  Because Sprenger attempts to prove the Bank's rationale was pretextual, we begin by examining that rationale.

In justifying its conduct, the Bank notes that from 1992 onwards, Sprenger's performance reviews reflected the concerns which ultimately led it to withhold raises in 1997 and 1998.  From 1993 through 1996, those reviews consistently criticized him for failure to adequately plan his calls on member banks, failure to adequately use available technological tools, and failure to adequately consult with and give feedback to his managers.  His reviews also reflected poor relationships with support staff and a failure to pro-actively develop new tools, resources and marketing concepts for the Bank or for member banks.  He received a number of "needs improvement" grades in these areas.  The Bank argues its February 1997 raise decision must be understood in light of these prior reviews.  The Bank argues it then decided not to grant Sprenger a raise after the December 1997 review because he showed only marginal improvement.  The Bank argues the September 1998 decision followed from continued perceived deficiencies in Sprenger's use of available sales, marketing and other technology.

Sprenger offers various pieces of evidence he asserts rebut the Bank's rationale.  He points to VanGilder's recommendation that he receive a raise based on his 1996 performance review from which he infers his performance was "satisfactory and deserving of a raise."  He also points to what he characterizes as the Bank's deviation from the Guide as creating an inference of pretext.  He further argues the Bank's failure to give him any effective feedback permits a reasonable inference of pretext, and that his being a "good employee" does the same.

Even when construed most favorably to Sprenger's case, however, these facts do not undermine the Bank's justification.  Sprenger has not adduced evidence that the Guide was a policy rather than, as its title suggests, a guide.  Indeed, the record reflects that the Bank did not always follow the Guide with similarly situated employees.  In recommending Sprenger for a raise, VanGilder relied on the evaluation he had just

completed and the Guide. That narrow view, however, does not undermine the Bank's decision to withhold a raise, which was based on Sprenger's entire performance history. As to the rate of feedback, Sprenger has not shown any official feedback policy the Bank should have used other than the appraisal forms themselves, which Sprenger admittedly received. Finally, the bare assertion without more that he was a "good employee" does not undercut the Bank's justification.

Sprenger offers some additional evidence regarding the Bank's later salary decisions. He argues that he met all three performance goals set for him after the February 1997 review and therefore deserved a raise. He also points to his performance on his 1997 marketing goals. The record, however, does not support Sprenger's assertions. VanGilder's contemporary memo stated Sprenger still needed to improve planning and organizing his calls, a repeated complaint. Moreover, Sprenger has not adduced any evidence regarding Hansen's conduct in the wake of the December 1997 review. As to the incentive goals, the 1997 figures Sprenger relies on were based on group rather than individual performance. Sprenger out-earned his co-workers only because of his higher base salary.

He also points to the "ambush" assessment in Des Moines in October 1998, as evidence of pretext. Sprenger's own deposition testimony questions the "ambush" characterization, because he admitted knowing beforehand that he would be required to "sit down with people in IS." Moreover, that the Bank tested the skills it thought he lacked does not rebut the Bank's rationale for conducting the test and for its employment action. We have previously held that reliance on an honest yet incorrect belief is not evidence of pretext, see Scroggins v. University of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000); Stuart, 217 F.3d at 636-37, and Sprenger has not introduced evidence that the Bank's belief was anything but honest or that he was actually properly using the technology prior to that assessment.

In the alternative, Sprenger proffers purported evidence of actual age bias. He recounts an episode in 1996 when the Bank circulated a seminar document regarding the difficulty bankers over fifty have in keeping up with new technology. He also recounts a presenter at a seminar discussing "teaching old dogs new tricks," to which Jordan said "like Bill." Finally, he complains that Jordan inquired into his retirement plans. We have previously ruled that reasonable inquiries into an employee's retirement plans do not permit an inference of discrimination, Montgomery v. John Deere & Co., 169 F.3d 556, 560 (8th Cir. 1999), and Sprenger has not shown the inquires made to have been unreasonable. Moreover, a bank's concern with keeping older employees up to speed hardly warrants an inference of discriminatory animus. As for Jordan's comment, here as in all areas of discrimination law, we hesitate to rely on isolated comments as proof of bias, see Hill v. St. Louis Univ., 123 F.3d 1114, 1119 (8th Cir. 1997), lest the law become a "general civility code," Oncale v. Sundowner Offshore Servs, Inc., 523 U.S. 75, 80 (1998). Without proof of context, which Sprenger does not provide, the statement "like Bill" permits nothing but speculation. Sprenger's attempt to prove actual discrimination must also be weighed against the fact that Sprenger was fifty-two years old when hired, and fifty-six when these events took place. Moreover his co-workers were all well over forty years of age, and of all similarly situated employees he was not the oldest.

Viewed either individually or in the aggregate, this evidence neither undermines the Bank's legitimate rationale nor permits a reasonable inference of discrimination. The inferences Sprenger would have us draw do not follow naturally from the evidence presented, and would constitute sheer speculation. Because no reasonable jury could find pretext or discrimination, we affirm.

## B.

We next turn to Sprenger's claim of disability-based discrimination. In order to prove a prima facie case of disability discrimination, a plaintiff must demonstrate "(1)

he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without [reasonable] accommodation; and (3) he suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." Allen, 214 F.3d 981. On the record before us, we conclude Sprenger did establish a prima facie case of disability discrimination, but that he failed to raise a genuine question of material fact as to either pretext or actual discrimination.

Sprenger points first to the temporal proximity, a matter of weeks, between the Bank's learning of his peripheral neuropathy and the February 1997 review and denial of a raise. He then bolsters the proximity argument with reference to various comments and conversations among his superiors. He notes VanGilder inquired after his health and whether he had considered disability retirement, and also that VanGilder and Connell discussed his health on "two, perhaps three" occasions. Finally, he observes VanGilder's "concern" because driving was an "integral part" of Sprenger's job.

The parties agree Sprenger established the first two elements of the prima facie case, and we think the evidence meets the bare minimum required to support the third. A negative review and denial of a raise may constitute negative employment action. The proximity between that action and the disclosure of a potentially debilitating condition warrants concern. See, e.g., O'Bryan v. KTIV Television, 64 F.3d 1188, 1193 (8th Cir. 1995) (relying on proximity to establish a prima facie case of retaliation). We think this is sufficient to put the employer to its proofs–the purpose of the burden-shifting scheme.

This evidence, however, does not sufficiently undermine the Bank's justification to create a material question of fact as to pretext. Sprenger's case really turns on the proximity question. The fact that the Banks' rationale relies on the entire course of Sprenger's performance, however, dulls the effect of proximity. Moreover, we have been hesitant to find pretext or discrimination on temporal proximity alone, see Stuart,

217 F.3d at 635-36; Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 346-47 (8th Cir. 1996), and look for proximity in conjunction with other evidence. Sprenger has not suggested that the Bank altered its appraisal schedule in any way that would enhance the proximity concern.

Nor do the various statements to which Sprenger points support an inference of discrimination or bolster a finding of pretext. As noted above, a company may make reasonable inquiry into retirement plans. An employer need not retain an employee who cannot perform the essential functions of his job. An employer may therefore discuss that ability. Moreover employers and co-workers may discuss, express concern for or inquire after each other's physical well-being. We simply do not find enough in Sprenger's evidence to permit a reasonable jury to infer the Bank's justification to have been pretextual or that actual disability discrimination occurred.

III.

In his final claim, Sprenger asserts the Bank denied him a raise in September 1998, in retaliation for having filed state and federal civil rights complaints. He appeals the district court's ruling that he failed to establish a prima facie case of retaliation.

Sprenger again argues that the temporal proximity between the Bank's decision and his action may establish an inference of discrimination. The proximity as to this claim, however, is more attenuated. Moreover, here it lacks any other support. The only other evidence Sprenger places any emphasis on are two quotes from Jordan. When Jordan and Sprenger met to discuss the September 1998, review, Jordan apparently said to Sprenger, "I'll look at it again. There are some attitudes that need to be changed in Des Moines." Shortly thereafter, Jordan told Sprenger, "Bill, play the game." Sprenger, however, offers no context for these quotes, nor any evidence from which we might deduce their meaning. Standing alone they are utterly without meaning and are therefore devoid of weight. The "attitudes in Des Moines," for instance, might

be discriminatory, or might be well grounded opinions that Sprenger was insufficiently versed with the Bank's technology. And the "game" could be anything at all. Any conclusion we might draw would be mere speculation. The burden shifting mechanism first requires the plaintiff to establish a prima facie case before the defendant will be put to its proofs. As to this charge, as the district court correctly ruled, Sprenger has failed to clear that first hurdle.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.