# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2006WM

_____

| | | |
|---|---|---|
| Susan C. Darby, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| Floyd Bratch; Kansas City, Missouri Police Department; Kansas City Board of Police Commissioners; Joseph J. Mulvihill;  Dennis C. Eckold; and Stacey Daniels, Dr., | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Appellees, | * | On Appeal from the United |
| | * | States District Court |
| Jeffrey J. Simon, | * | for the Western District |
| | * | of Missouri. |
| Defendant, | * | |
| | * | |
| Kay Barnes; City of Kansas City, Missouri; Doug Weishar, individually and in his official capacity as a manager for the City of Kansas City, Missouri, and the Kansas City, Missouri, Police Department; Rosilyn Allen, individually and in her official capacity as a manager for the City of Kansas City, Missouri, and the Kansas City, Missouri, Police Department; Terrie Hagedorn, individually and in her official capacity | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |

as a manager for the City of Kansas    *
City, Missouri, and the Kansas City,    *
Missouri, Police Department; and        *
Karl Zobrist,                           *
                                        *
         Appellees.                     *

_____

Submitted: January 17, 2002

Filed:   April 11, 2002 (Corrected 4/22/02)
_____

Before WOLLMAN,[1] Chief Judge, RICHARD S. ARNOLD and HANSEN,[2] Circuit
    Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


Susan Darby brought this action alleging that the defendants, the Kansas City,
Missouri, Police Department, the Kansas City Board of Police Commissioners, the
City of Kansas City, Missouri, and several individual employees,[3] violated the
Americans with Disabilities Act, 42 U.S.C. § 12112(a), and the Missouri Human

_____

[1]The Hon. Roger L. Wollman stepped down as Chief Judge of the United States
Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.
He has been succeeded by the Hon. David R. Hansen.

[2]The Hon. David R. Hansen became Chief Judge of the United States Court of
Appeals for the Eighth Circuit on February 1, 2002.

[3]These employees include Floyd Bratch, Joseph Mulvihill, Dennis Eckold,
Stacey Daniels, Jeffrey Simon, Kay Barnes, Doug Weishar, Rosilyn Allen, Terrie
Hagedorn, and Karl Zobrist.  Doug Weishar, Rosilyn Allen, and Terrie Hagedorn
were sued individually and in their official capacity as managers for the city of
Kansas City, Missouri, and the Kansas City, Missouri, Police Department.

Rights Act, Mo. Rev. Stat. § 213.055 (2000). She also claimed that the defendants retaliated against her in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. In addition, the plaintiff brought claims for breach of her employment contract and violation of her constitutional rights, contrary to 42 U.S.C. § 1983. The defendants moved for summary judgment, and this motion was granted by the District Court. Ms. Darby appeals from the order of the District Court.

Specifically, Ms. Darby presents four major arguments on appeal:[4] first, that the District Court incorrectly determined that the defendant, the Kansas City Board of Police Commissioners, was immune from suit pursuant to the Eleventh Amendment; second, that the Court incorrectly held that plaintiff failed to establish a prima facie case of retaliation under the Family and Medical Leave Act; third, that the Court erred in determining that plaintiff failed to establish a prima facie case of disability discrimination under the Americans with Disabilities Act; and fourth, that the Court failed to apply the Missouri Human Rights Act to disability discrimination in the area of employment. We affirm in part and reverse in part. We hold that the Kansas City Board of Police Commissioners is not immune from suit under the Eleventh Amendment, and that, on the present state of the record, triable issues of fact were presented under the Family and Medical Leave Act. In addition, we hold that the Missouri Human Rights Act does apply to disability discrimination in the area of employment, but we affirm the judgment on that claim on other grounds. We also affirm as to the claim under the Americans with Disabilities Act.

---

[4]It seems that the breach-of-contract and § 1983 claims are not pressed on appeal. In any event, we find no error in the action of the District Court dismissing these claims on summary judgment. In addition, plaintiff argues that the District Court erred in dismissing her claim of retaliation for conduct protected by the Americans with Disabilities Act. As defendants argue, this claim was not pleaded in the District Court, nor did that Court's opinion address it. We therefore decline to reach it on appeal.

I.

In 1993, Ms. Darby began working for the Kansas City Police Department (KCPD) as a dispatcher in the communications unit. In 1994, she began experiencing symptoms of thyroid disease, including migraine headaches, heavy menstrual bleeding, weakness from loss of blood, difficulty concentrating, chills, digestive problems, trouble sleeping, bloating, extreme fatigue, difficulty breathing, increased heart rate, and anxiety. Ms. Darby was diagnosed with Graves's disease, a form of hyperthyroidism.

In March 1998, Ms. Darby applied for a transfer to the police academy. One of her supervisors, Captain Doug Weishar, advised Ms. Darby that he would approve this transfer if her use of sick leave decreased over the next six months. Soon after this agreement was made, Captain Weishar was replaced by Captain Rosilyn Allen. Captain Allen knew of the agreement between Ms. Darby and Captain Weishar, and indicated that she would honor it. Both were aware of Ms. Darby's diagnosis of Graves's disease. Between January 1998 and May 1998, Ms. Darby missed ten days and one hour of work due to her thyroid disease. On May 18, 1998, Captain Allen "disapproved" Ms. Darby's transfer request and passed the request on to her superiors, noting that "the monitoring of Dispatcher Darby's work attendance will continue . . .." Appellant's Appendix (App.) 289. Ms. Darby's thyroid disease continued to hinder her ability to attend work regularly.

Ms. Darby met with Captain Allen and Captain Terrie Hagedorn to discuss an improper helicopter "ride-along" on September 18, 1998. In a "ride-along," an employee rides in a helicopter along with the pilot in order to observe the job the pilot is doing. This can be a regular part of training. The defendants, however, contend that the ride-along was improper because Ms. Darby did not obtain advance permission for it. The plaintiff's position is that the policy requiring advance permission did not apply to the portion of the Police Department in which she

-4-

worked. The policy as written, App. 203, appears to support plaintiff's position. At the meeting with Captain Allen and Captain Hagedorn, Ms. Darby was advised that continued absences from work would not be tolerated. Ms. Darby was also informed that she was being transferred to a new shift with a different zone assignment.[5] During the meeting, Ms. Darby stated that she thought a transfer was discriminatory. According to Ms. Darby's testimony, Captain Allen responded, "I can show you discrimination." App. 291. The record indicates that Captain Allen knew of Ms. Darby's intention to use FMLA leave prior to this meeting.

On October 9, 1998, Ms. Darby applied for Family and Medical Leave Act leave. She met with Supervisors Hoskins and Hagedorn to discuss her request. At this time, she was presented with an amended mid-year evaluation that included a reference to an excessive use of sick time. As stated by the District Court, it is "[u]ncontroverted in the record . . . that Allen instructed Hagedorn to amend the mid-year evaluation for Darby to include a reference to Darby's absences due to her use of sick time." App. 292. These instructions were allegedly based on the attendance policy at the KCPD, Policy 98-2. However, because the attendance policy did not permit an employee to be disciplined for the use of sick leave, but did allow an employee to be disciplined for the use of unpaid leave, Supervisor Hagedorn recommended that Ms. Darby be terminated for her use of unpaid leave. According to the defendants, Ms. Darby was also presented with two Incident Reports, one relating to the helicopter ride-along and one relating to excessive use of sick time.[6]

---

[5]The defendants assert that the transfer was necessary due to a manpower shortage. However, the record indicates that Ms. Darby was never actually transferred to a new shift.

[6]An Incident Report serves as a written reprimand in the KCPD. It can lead to other forms of discipline, including termination of employment.

While on FMLA leave, Ms. Darby received an Incident Report citing her absences from work and the use of her unpaid leave. The "Description of Allegation" reads, "dispatcher Darby has continuously utilized unpaid leave each of the last three years, in excess of the paid leave amount that the department grants employees of her tenure." App. 227. The report goes on to include the number of hours of unpaid leave Ms. Darby was granted in 1996, 1997, and 1998.[7] There was no recommendation of discipline made in the revised Incident Report.

In April 1999, Ms. Darby planned to return to work. Because the Incident Reports were still pending, she contacted Captain Allen to determine if Captain Allen was planning to use the Reports to terminate her employment. When Ms. Darby met with Captain Allen, she was informed that because of her use of sick time, she would not be promoted. Ms. Darby then returned to work with the same job assignment and the same rate of pay as she had before her FMLA leave. However, Ms. Darby testified that after returning to work she was not placed on the schedule or on roster lists used to circulate information.[8] On April 28, 1999, Ms. Darby resigned from the KCPD. Because the Incident Reports regarding Ms. Darby's use of unpaid leave and the ride-along are still pending, she is precluded from being rehired by the KCPD.

II.

This Court reviews a grant of summary judgment de novo. Iowa Coal Min. Co. v. Monroe County, 257 F.3d 846, 852 (8th Cir. 2001). After reviewing the record in

---

[7]Ms. Darby was absent pursuant to her FMLA leave request on 39 days in 1998. App. 106.

[8]In addition, Ms. Darby testified that before she returned to work, Captain Allen told her that she was not welcome, and that, after returning to work, none of the other employees would have anything to do with her. These circumstances, the plaintiff argues, make out a genuine issue of material fact with respect to constructive discharge. For reasons stated later, we disagree.

-6-

the light most favorable to the nonmoving party, the Court will affirm the decision if there are no genuine issues of material fact.  Id.

### A.  Eleventh Amendment Immunity

We first address Ms. Darby's contention that the District Court erred in granting Eleventh Amendment immunity to the Kansas City Board of Police Commissioners.  The District Court determined that the Kansas City Board of Police Commissioners was a political subdivision of the state of Missouri, and was, therefore, entitled to immunity.  However, the District Court did not have the benefit of this Court's opinion in Gorman v. Easley, 257 F.3d 738 (8th Cir. 2001), cert. denied, 122 S. Ct. 865 (2002).  In that case, we held that the Kansas City Board of Police Commissioners does "not constitute an arm of the state for purposes of Eleventh Amendment immunity."  Id. at 745.  We based our reasoning, in part, on the Supreme Court's ruling in Auer v. Robins, 519 U.S. 452 (1997), in which the Court held that the St. Louis Board of Police was "not an arm of the state" for Eleventh Amendment purposes.  Gorman, 257 F.3d at 744 (internal quotations omitted).

Because our decision in Gorman is controlling on this issue, the District Court's determination that the Kansas City Board of Police Commissioners was entitled to Eleventh Amendment immunity must be reversed.

### B.  Family and Medical Leave Act

Next, we address Ms. Darby's argument that the District Court erred in determining that she failed to establish a prima facie case of FMLA retaliation.

The FMLA provides eligible employees[9] up to 12 workweeks of unpaid leave during any 12-month period. 29 U.S.C. § 2612. An employee must provide notice to an employer that she plans to take FMLA leave. 29 U.S.C. § 2612(e)(2). The FMLA prohibits employers from discriminating against employees for asserting rights under the Act. 29 U.S.C. § 2615(a)(2). This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action. To establish a prima facie case of FMLA retaliation, an employee must show that she engaged in activity protected under the Act, that she suffered an adverse employment action by the employer, and that a causal connection existed between the employee's action and the adverse employment action. Richmond v. ONEOK, Inc., 120 F.3d 205, 208 (10th Cir. 1997).

The District Court determined that Ms. Darby did not suffer an adverse employment action. We disagree. Specifically, Ms. Darby points to three actions taken by her employer that qualify as adverse employment actions.

First, Ms. Darby was told upon returning to work in April 1999 that she would not be promoted. This is sufficient under our precedent to find an adverse employment action. See Davis v. Sioux City, 115 F.3d 1365 (8th Cir. 1997). In that case, we held that the transfer of an employee to another position of greater salary yet "ha[ving] fewer opportunities for salary increases" was a sufficiently adverse employment action to sustain a retaliation claim under Title VII. Davis, 115 F.3d at 1369. Additionally, we have held that "[u]pon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of

_____

[9]An eligible employee is defined as an employee "who has been employed — (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). There is no dispute that Ms. Darby is an "eligible employee."

benefits . . .." Spangler v. Federal Home Loan Bank of Des Moines, 278 F.3d 847, 851 (8th Cir. 2002).

In the case at hand, Ms. Darby was specifically informed that she would not be promoted because of her use of sick leave. At this time, Ms. Darby had missed 60 days pursuant to her FMLA leave request in 1999. The record indicates that she was absent on unpaid leave for only five other days during 1999. App. 106. Though Ms. Darby was reinstated to the same position as she had before taking FMLA leave, it is apparent that she was reinstated with a definite loss of a benefit, namely the ability to be promoted. There are three types of absences involved here: paid sick leave, which presumably is a contractual right of the employee, FMLA leave, which is unpaid, and other unpaid leave. Of course, an employer could discipline an employee for taking sick leave when she is not sick, but there is no evidence in this record to that effect. In addition, an employee could be disciplined for taking unpaid leave not covered by the FMLA, but, as we have noted, there were only five such days during 1999. The employer does not argue, at least on this appeal, that its discipline was based upon these five days.

Second, Ms. Darby was otherwise disciplined for engaging in activity protected by the FMLA. The Incident Report that she received while on FMLA leave specifically listed "unpaid leave" as a problem. FMLA leave is a form of unpaid leave. 29 U.S.C. § 2612. It was also for this reason that Supervisor Hagedorn recommended her termination. When Ms. Darby exercised rights protected by the Act (taking unpaid leave under the FMLA), she was disciplined by receiving a written reprimand and was recommended for termination. These actions are also sufficiently adverse to sustain a prima facie case for FMLA retaliation. We do not understand defendants to be arguing that the discipline was based solely on the five days of non-FMLA unpaid leave, or even that, but for those days, discipline would not have been imposed. This issue is open for further development on remand.

Third, because the Incident Report regarding Ms. Darby's use of unpaid leave is currently pending, KCPD policies make it impossible for her to be rehired. This too is sufficiently adverse to Ms. Darby's employment to sustain a claim of retaliation under the FMLA. Again, the Incident Report focused on the use of unpaid leave by Ms. Darby, an activity protected by statute.[10]

For these reasons, we conclude that the plaintiff presented sufficient evidence to create a genuine issue of material fact on the question whether defendants retaliated against her for her use of FMLA leave. She did not have an exemplary attendance record, to say the least, but her statutory rights, together with her contractual right to sick leave, must be respected. On the record presently before us, a reasonable juror could conclude that there was a causal connection between adverse employment actions suffered by the plaintiff and her use of FMLA leave. Summary judgment is therefore inappropriate on this question.

The next issue that must be addressed is whether a retaliation claim under the FMLA can be brought against public officials in their individual capacities.[11] This issue is one of first impression for our Court. Other courts have analyzed this issue by comparing the definition of employer under the FMLA to the definition of employer under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.[12] The

---

[10]Another Incident Report, relating to the allegedly improper ride-along, is also still pending, but, as we have noted, there is a legitimate issue as to whether the ride-along policy relied upon applied to Ms. Darby. If it did not, the use of this Incident Report might be pretextual.

[11]This issue affects only the defendants Weishar, Allen, and Hagedorn.

[12]See Wascura v. Carver, 169 F.3d 683 (11th Cir. 1999) (holding public officials in their individual capacities are not employers under the FLSA or the FMLA). But see Luder v. Endicott, 253 F.3d 1020, 1022 (7th Cir. 2001) (holding, under the FLSA, that Wascusa is inconsistent with Hafer v. Melo, 502 U.S. 21, 28 (1991); Morrow v. Putnam, 142 F. Supp. 2d 1271 (D. Nev. 2001) (disagreeing with

-10-

FMLA defines employer as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]" 29 U.S.C. § 2611(4)(A)(ii)(I). This language is very similar to the definition of employer under the FLSA. Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . .." 29 U.S.C. § 203(d). The implementing regulations of the FMLA recognize the similarities of the FMLA and FLSA definitions of employer. 29 C.F.R. § 825.104(d). These regulations also suggest that individual liability arises under the FMLA. Ibid.

This Court has addressed the issue of personal liability of an employer under the FLSA in Rockney v. Blohorn, 877 F.2d 637 (8th Cir. 1989). In that case, the Court decided whether personal liability for an employer exists under ERISA. In the course of our discussion, we compared the definition of employer under ERISA to that under the FLSA. We implicitly assumed in Rockney that individual liability does exist under the FLSA. However, we have not directly addressed the issue of individual liability for public officials under either the FLSA or the FMLA.

the Eleventh Circuit and stating public officials in their individual capacities are employers under the FLSA and FMLA); Longstreth v. Copple, 101 F. Supp. 2d 776 (N.D. Iowa 2000) (holding private employers in their individual capacities are employers under FMLA); Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403 (M.D. Pa. 1999); Meara v. Bennett, 27 F. Supp. 2d 288, 291 (D. Mass. 1998) (noting that the definition of employer under the FMLA "suggests that individuals *are* contemplated as defendants"); Knussman v. Maryland, 935 F. Supp. 659 (D. Md. 1996).

Regulations under the FMLA, 29 C.F.R. § 825.104(d) (2001), also take the position that an "employer" includes "individuals . . . 'acting in the interest of an employer'," and states that such individuals "are individually liable for any violations of the requirements of FMLA." The example given in the regulations is from the private sector ("corporate officers"), but, as the Seventh Circuit observed in Luder, a distinction between the public and private sectors in this regard cannot be sustained.

-11-

It seems to us that the plain language of the statute decides this question. Employer is defined as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]" 29 U.S.C. § 2611(4)(A)(ii)(I). This language plainly includes persons other than the employer itself. We see no reason to distinguish employers in the public sector from those in the private sector. See Morrow, 142 F. Supp. 2d at 1275 (stating that opinions which hold public officials are not subject to individual liability "do not explain why public officials should be exempted from liability while managers in the private sector are not."). If an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity.

The individual defendants in this case also assert the defense of qualified immunity. This argument is without merit. The Family and Medical Leave Act creates clearly established statutory rights, including the right to be free of discrimination or retaliation on account of one's exercise of leave rights granted by the statute.[13] Qualified immunity is also asserted as a defense to the claim under 42 U.S.C. § 1983, but we have already held that the District Court correctly dismissed this claim.

C. Americans with Disabilities Act

We next address Ms. Darby's contention that the District Court erred in determining that she failed to present a prima facie case under the ADA. The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual . . .." 42 U.S.C. § 12112(a).

---

[13]Defendants have not argued that they should receive qualified immunity because of uncertainty over the individual liability of public officials.

In order to establish a prima facie case of ADA discrimination, Ms. Darby must show that: (1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an adverse employment action due to her disability. Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir. 1999).

The District Court held that Ms. Darby is "disabled within the meaning of the ADA," and there seems to be no dispute about that. App. 299. Defendants assert, however, that she was not qualified to perform the essential functions of the job, one of which is regular attendance. We must agree with defendants in part. Presence at the job is no doubt essential, except in cases where the job could be done from home, which is not claimed here. See Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 445-46 (8th Cir. 1998). Ms. Darby says that transfer to the police academy would have been a reasonable accommodation, but again, attendance would surely be essential.

As we understand plaintiff's ADA claim, it is that she was discharged on account of her disability. The difficulty is that plaintiff was not discharged. She voluntarily resigned. Defendants had taken her back as an employee, and she had been on the job for only a few days when she quit. Constructive discharge would be a theoretically sound response to this argument, except that plaintiff had been back at work for only a short period of time. We do not believe a reasonable trier of fact could have found that plaintiff had stuck it out long enough to conclude reasonably that working conditions were intolerable. Accordingly, the dismissal of the ADA claim will be affirmed.

D. Missouri Human Rights Act

Ms. Darby also argues that the District Court failed to apply the Missouri Human Rights Act to the area of employment and limited its application to

-13-

discrimination in housing. Defendants concede that the MHRA does apply to discrimination in employment and that the District Court erred in ruling to the contrary. Appellee's Brief at 10. We agree. However, a claim under the MHRA is analyzed in the same manner as a claim under the ADA. See <u>Nesser</u>, 160 F.3d at 445. Therefore, if summary judgment is appropriate on Ms. Darby's ADA claim, it is appropriate on her MHRA claim. Because we agree with the District Court that Ms. Darby failed to present sufficient evidence for a reasonable juror to conclude that Ms. Darby was discriminated against under the ADA, we affirm the Court's grant of summary judgment on Ms. Darby's MHRA claim.

### III.

The judgment of the District Court is affirmed in part and reversed in part, and this case is remanded to the District Court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.