# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2821

_____

| | | |
|---|---|---|
| Candis Smith, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Allen Health Systems, Inc.; Allen | * | District Court for the Northern |
| Memorial Hospital Corporation; The | * | District of Iowa. |
| Memorial Foundation of Allen | * | |
| Hospital; Kenneth Leibold; Robert | * | |
| Justis; Richard Seidler, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: March 15, 2002

Filed: September 11, 2002

_____

Before HANSEN, Chief Judge, JOHN R. GIBSON, Circuit Judge, and GOLDBERG,[1] Judge.

_____

JOHN R. GIBSON, Circuit Judge.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Candis Smith appeals the district court's[2] entry of summary judgment against her and in favor of her employer, The Memorial Foundation of Allen Hospital, and related defendants[3] on her claim that Allen fired her in retaliation for taking leave to adopt a child and for complaining about the Hospital's hiring practices. She claimed Allen's termination of her employment violated the Family and Medical Leave Act, 29 U.S.C. § 2615 (2000), Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3 (1994), the Iowa Civil Rights Act, Iowa Code § 216.6 (2000), and that it was a breach of contract. Allen responded that it fired Smith for failure to perform a crucial function of her job--sending out receipts to donors who contributed to the Allen Foundation. The Magistrate Judge held that there was no evidence that Allen's proffered reason for firing Smith was pretextual. Moreover, he found that the employee handbook and policy on which Smith based her contract claim did not in fact form a contract, nor did Allen violate the provisions of those documents. Accordingly, he entered summary judgment for Allen. On appeal Smith contends that there was evidence of pretext and that Allen breached a contractual duty to her. We affirm.

Smith worked for the Foundation from 1985 to 1999. The Foundation is the fund-raising arm of Allen Memorial Hospital. Smith's job title changed from development secretary to administrative secretary, but the duties of her job always included promptly acknowledging contributions to the Foundation with a receipt and

[2]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa. The parties consented to submission of this case to a Magistrate Judge.

[3]Smith also named as defendants Allen Health Systems, Inc., and Allen Memorial Hospital Corp., which she alleges to be integrated employers with the Foundation, and Kenneth Leibold, Robert Justis, and Richard Seidler, respectively the Hospital Human Resources Manager, the Foundation Executive Director, and the Hospital CEO. We will refer to the defendants collectively as "Allen," except where it is necessary to name a particular defendant.

thank you letter. Smith's written job description as administrative secretary included the requirement that she "acknowledge each donation with a thank-you card and a receipt daily." She agreed at her deposition that it was her understanding that these tasks were to be performed daily, except that in a "crisis," she might be allowed to catch up "on the next day or so." Also at her deposition, Smith agreed that she understood the importance to a charitable organization of thanking donors and getting tax receipts out to them. She admitted that in the second week of December 1998, Robert Justis, the Executive Director of the Foundation, told her that he had received complaints from donors that they had not received acknowledgments. Smith said she told Justis that she "would try to get them [the acknowledgments] out as quickly as possible," but they did not discuss how far behind she was.

Smith was involved in a religious ministry through which she helped Bosnian immigrants who had settled in Iowa. Beginning in 1997, she helped Bosnians apply for jobs at Allen Hospital, but the Hospital did not hire any of the people Smith knew. In the fall of 1998, Smith asked Kenneth Leibold, the Hospital's Human Resources Director, if national origin discrimination could be the reason for the Hospital's failure to hire the Bosnians. Leibold said no, and the two of them never talked about the subject again.

On January 1, 1999, Smith took family leave so that she could go to Romania to adopt a child. The day before she went on leave, Smith took a stack of donor receipts that needed to be mailed out, put them on a chair in her office, and left a note for another employee, Jenny Garrison, asking her to type thank you notes and mail the notes and receipts while Smith was on leave. Smith said she "may have mentioned to [Garrison] that I would appreciate her getting those out in the first couple days because of the tax reasons," but she did not tell Garrison that it was urgent. Smith also testified that she mentioned to Justis that "there were probably going to be a few things I had not completed" before going on leave.

On January 6, 1999, while Smith was in Romania, another employee, Matt Rolinger, found a stack of receipts in Smith's work area. The receipts went back to November 4, 1998 and represented more than 400 donations worth more than $350,000. One unacknowledged donation was for a contribution worth $136,000 from the donor who had complained back in November about not getting a receipt. Justis and Seidler decided to discharge Smith. When Smith got back from Romania, Justis called her in for a meeting to take place on January 14, 1999. At the meeting, Justis told Smith that her employment was being terminated because of her failure to send out the receipts.[4]

Smith sued on the theories that Allen had terminated her in retaliation for exercising her right to take family leave and for complaining about Allen's failure to hire Bosnians, which Smith characterized as religious discrimination. She also claimed that Allen's Associate's Handbook and Standard Operating Procedure for employee discipline constituted a contract between Allen and her, and that Allen breached that contract by terminating her employment without proceeding through the progressive discipline steps described in those two documents.

Allen responded that it had terminated Smith's employment because she failed to send receipts to its donors. It also denied that the Associate's Handbook or Standard Operating Procedure formed a contract or that it had violated the terms of those documents. It noted that both the handbook and the operating procedure permitted Allen to discharge an employee without progressing through disciplinary steps.

---

[4]Allen later rehired Smith as a float secretary, at the same salary.

I.

Smith argues that her Family and Medical Leave Act retaliation claim should have survived summary judgment because she has discredited Allen's proffered reasons for discharging her.

We review the district court's grant of summary judgment de novo. Darby v. Bratch, 287 F.3d 673, 678 (8th Cir. 2002). We must affirm if, viewing the record in the light most favorable to Smith, there are no genuine issues of material fact and Allen is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

The Leave Act provides eligible employees up to twelve work-weeks of unpaid leave in any twelve-month period and prohibits employers from discriminating against employees for exercising their rights under the Act. 29 U.S.C. §§ 2612, 2615(a)(2) (2000). Basing an adverse employment action on an employee's use of leave, or in other words, retaliation for exercise of Leave Act rights, is therefore actionable. See Darby, 287 F.3d at 679. An employee can prove Leave Act retaliation circumstantially, using a variant of the McDonnell-Douglas[5] method of proof. To establish a prima facie case of retaliation, Smith must show that she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action. Darby, 287 F.3d at 679. It is undisputed that Smith took leave to adopt a child and that she was discharged. There is, however, some question about whether Smith established a causal connection between her taking leave and her firing.

At her deposition, Allen's lawyer asked Smith to state the basis for her claim that Allen retaliated against her. She replied simply: "Because I was on family leave

---

[5]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).

-5-

at the time that this termination was done." Counsel asked if there was any other basis for her claim, and she said: "No, just the time frame."

We have discounted, albeit with qualification, the possibility that mere temporal proximity between protected act and adverse employment action can establish the necessary causal connection: "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). A pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement. See Bassett v. City of Minneapolis, 211 F.3d 1097, 1105-06 (8th Cir. 2000) (extensive pattern of protected activity followed by disciplinary measures established causation); Hudson v. Norris, 227 F.3d 1047, 1051 (8th Cir. 2000) (large number of adverse actions within four months of protected activity, plus evidence of pretext, established causation). But even without a pattern, we have sometimes held that the timing of one incident of adverse employment action following protected activity sufficed to establish causal connection, e.g., O'Bryan v. KTIV Television, 64 F.3d 1188, 1193-94 (8th Cir. 1995) (three months between filing administrative complaints and firing established causal connection), and we have done this after our en banc decision in Kiel. See Sprenger v. Home Loan Bank Bd., 253 F.3d 1106, 1113-14 (8th Cir. 2001) (temporal proximity sufficient to establish prima facie case of disability discrimination, but not to show pretext); Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1196 (8th Cir. 2001) ("Foster established a temporal connection between her requests for accommodating Terry's disability and her termination, permitting an inference of retaliation."). But see Gagnon v. Sprint Corp., 284 F.3d 839, 851, 852 (8th Cir. 2002) (one month's time between response to EEOC claim and adverse action did not establish causation), petition for cert. filed (Aug. 19, 2002) (No. 02-273); Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) ("[A] 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge."); Scroggins v.

Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir. 2000) (same); Bradley v. Widnall, 232 F.3d 626, 633 (8th Cir. 2000) (Plaintiff "must do more than point to the temporal connection between the filing of her first complaint and the Air Force's allegedly adverse actions.").

Although it is difficult to find a principle neatly explaining why each of our cases held temporal connection was or was not sufficient to satisfy the causation requirement, it appears that the length of time between protected activity and adverse action is important. The Supreme Court has said: "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted). For instance in Kipp, 280 F.3d at 897, we said that "the interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link." By contrast, we said in Sprenger that proximity of a "matter of weeks" between disclosure of a potentially disabling condition and adverse employment action was sufficient to complete a prima facie case of discrimination. 253 F.3d at 1113-14. In this case, Smith's family leave began on January 1 and Allen discharged her on January 14. These two events are extremely close in time and we conclude that under our precedent this is sufficient, but barely so, to establish causation, completing Smith's prima facie case.[6] This holding is consistent with the overarching

---

[6]At oral argument we understood Smith to contend that she had met the causal connection requirement because if she had not gone on leave, no one would have found the receipts. In Kipp we made clear that the kind of causal connection required for a prima facie case is not "but for" causation, but rather, a showing that an employer's "'retaliatory motive played a part in the adverse employment action.'" 280 F.3d at 897. It therefore does not help Smith to argue that, had she not gone on leave,

philosophy of the <u>McDonnell Douglas</u> system of proof, which requires only a minimal showing before requiring the employer to explain its actions. <u>See generally</u> <u>Sprenger</u>, 253 F.3d at 1111.

However, the <u>McDonnell Douglas</u> battle is only begun with the prima facie case. If the employer comes forward with evidence of a legitimate, non-discriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual. <u>Kiel</u>, 169 F.3d at 1135. Allen has come forward with evidence of a reason other than retaliation for Smith's discharge–Smith's failure to send out the receipts promptly. Smith was then obliged to present evidence that (1) creates a question of fact as to whether Allen's proffered reason was pretextual and (2) creates a reasonable inference that Allen acted in retaliation. <u>See</u> <u>Erickson v. Farmland Indus., Inc.</u>, 271 F.3d 718, 726 (8th Cir. 2001). To carry the burden of showing pretext, Smith had to show that Allen's justification for the firing was unworthy of credence. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000).

It is possible for strong evidence of a prima facie case to establish pretext as well, <u>Erickson</u>, 271 F.3d at 726, but in this case, Smith's prima facie case was far from strong. In <u>Sprenger</u>, 253 F.3d at 1113-14, temporal proximity sufficed to create a prima facie case of disability discrimination, but not to show that the defendant's proffered reason was pretextual. We explained: "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence [than it takes to make a prima facie case], however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." <u>Id.</u> at 1111. Taking into account the nature and magnitude of Smith's dereliction, which the record shows put the Foundation in a difficult position with its donors, the sole fact that she was fired at about the same time she took family leave

---

her dereliction of duty would not have come to her employer's attention.

cannot support an inference of pretext. This is all the more true in light of two significant facts. First, before Smith went on leave, Justis had already talked to her once about the complaint he had received from a donor who did not get a receipt on time. Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity. See Smith v. Ashland, Inc., 250 F.3d 1167, 1174 (8th Cir. 2001). Second, the relation between the timing of Smith's leave and her firing is not mere coincidence, but has a causal explanation that hurts, rather than helps Smith's case: it was precisely because Smith was on leave that the she left the receipts on a chair, where someone else found them and took them to Justis, giving him his first notice of how far behind Smith actually was. This gives an explanation for the temporal proximity other than a retaliatory motive of the employer. See Kipp, 280 F.3d at 897 (retaliatory motive required to establish causal connection between employee's protected action and firing). Smith's prima facie case does not establish pretext.

Smith suggests in a footnote in her brief that she would challenge at trial the "legitimacy" of the stack of receipts Allen identified as not having been sent. One method of proving pretext is to show that the employer's proffered explanation had no basis in fact. Erickson, 271 F.3d at 727. However, at her deposition, Smith identified a stack of receipts as copies of receipts going back to the first week of November 1998, and she admitted that she did not send them out before going on leave on January 1, 1999. In light of these admissions, the mere assertion in her brief that she disputes the "legitimacy" of the receipts is not enough to raise a genuine issue of fact.

Smith attempted several other methods of proving pretext. First, she contends that she received a favorable review from Justis on December 31, 1998, just days before she was fired. In particular, Smith received a high score for acknowledging gifts on a daily basis. Recent favorable reviews are often used as evidence that the employer's proffered explanation for the adverse action had no basis in fact or was not

actually important to the employer. E.g., Erickson, 271 F.3d at 728. However, Justis did not know at the time of Smith's December 31, 1998 review that she was two months behind on sending out receipts. A review issued without that knowledge is irrelevant to whether Allen really fired Smith because she didn't send out the receipts on time. Smith contends that Justis knew that she had been late with receipts because he had spoken to her in December when he had received a complaint. But Smith agreed at her deposition that when Justis spoke to her, they did not discuss how far behind she was, and she told him she would "try to get [the receipts] out as quickly as possible." Justis's attempt to deal with the problem in early December by speaking to Smith about it and his acceptance of her word that she would rectify the situation does not tend to prove that the problem he discovered in January was not serious enough to call for Smith's discharge.

Smith also contends that she proved pretext by showing that Sue Groves, her replacement, was not held to the same standard as she was. An employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees who were not in the protected class, or as here, who did not engage in protected activity. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994). It is the employee's burden, however, to prove that the compared employees were similarly situated in all relevant respects. Id. Sue Groves testified that she considered it a matter of common sense that receipts should go out within the week of receiving a donation, and that the longest it had ever taken her to send a receipt was two weeks. A delay of two weeks is not comparable to a delay of two months, especially a delay that extended over the end of a calendar year, when donors would be trying to prepare tax returns. Sue Groves's testimony did not raise an issue of fact as to pretext.

Smith next contends that Allen changed its explanation for firing her after the fact. "Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext." Kobrin v. Univ. of Minn., 34

F.3d 698, 703 (8th Cir. 1994). Smith argues that Allen originally said it was discharging her for failing to get the receipts out, but that CEO Seidler later added the suggestion that Smith was fired for concealing from Justis how far behind she really was when he talked to her in December. Seidler certainly did not back off from the original explanation, but only pointed out an additional aspect of the same behavior. Seidler's testimony is not different from the reason originally given, but only a slight elaboration of that reason. It is not a substantial change in Allen's story, and it is not probative of pretext.

Smith also argues that Allen's discipline policy required that she be given a written warning before she could be fired. She points to the Allen Associate Handbook that describes a progressive discipline policy. However, the policy set forth in the Allen Associates' Handbook explicitly says, "<u>The Hospital reserves the right to immediately discharge associates without progressing through the first three disciplinary steps.</u>" (emphasis in original). Thus, Allen does not appear to have deviated from its announced policy. Additionally, since Smith has pointed to no other employees who were treated differently under the progressive discipline policy, Allen's failure to give written warning does not tend to prove that the reason given for her firing was pretextual.

Finally, Smith contends that she showed pretext by producing board meeting minutes from January 19, 1999 that mention that she was granted leave to adopt a "foreign born child," but do not mention that she was fired. Smith contends that this is evidence of a "cover up." We fail to see how this evidence tends to show that Smith was fired for a reason other than her failure to send out receipts. If the omission in the minutes supports any relevant inference at all, it is that the administration of Allen did not relish telling the board about the two-month delay in sending out receipts to donors. This hurts Smith, rather than helping her.

-11-

Smith has not carried the burden of showing that Allen's proffered reason for her discharge was pretext and the real reason was retaliation for her exercise of Leave Act rights.

## II.

Smith also claims that the firing was retaliation for her complaint about the hospital's failure to hire Bosnian job applicants. She characterizes this as religious discrimination, although the link to her religion is somewhat attenuated. We need not sort out her theory, because it is clear that she has not shown a causal connection between her exercise of religious rights and the termination of her employment. As with her Leave Act claim, Smith relies solely on temporal proximity to establish causation. However, the religious discrimination claim is much weaker than the Leave Act claim, because more time elapsed between her complaint about the Bosnians, which is only identified as happening "in the fall of '98," and the firing in January 1999. Moreover, as we have discussed above, Smith has not come forward with evidence of pretext. Her religious discrimination claim must fail.

Retaliation claims under the Iowa Civil Rights law are analyzed under the same method as federal retaliation claims. O'Bryan v. KTIV Television, 64 F.3d 1188, 1193 n.5 (8th Cir. 1995). Therefore, Smith's state law civil rights claims fail with her federal claims.

## III.

Finally, Smith contends that she presented factual issues as to whether the Allen Associates' Handbook and the Allen discipline policy created an obligation to give her written warning before firing her. We have already observed that the Associates' Handbook states that Allen reserves the right to discharge an employee without first progressing through milder disciplinary steps, and the same is true of the

discipline policy. Even if we assumed these documents constituted contracts (despite the Handbook's language to the contrary), Allen did not breach them.

We affirm the district court's entry of summary judgment in favor of Allen.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.