# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3005

_____

| | | |
|---|---|---|
| Laura Estrada, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Cypress Semiconductor | * | |
| (Minnesota) Inc. | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 12, 2010
Filed: August 17, 2010

_____

Before BYE, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Cypress Semiconductor (Minnesota) Inc. ("Cypress") terminated Laura Estrada in April 2008 for poor attendance. Estrada contends that one of the absences was protected by the Family and Medical Leave Act ("FMLA") and that Cypress improperly counted that absence against her in assessing her attendance. The district court[1] granted summary judgment to Cypress, and Estrada appealed. We affirm.

_____

[1]The Honorable Paul A. Magnuson, United States District Court Judge for the District of Minnesota.

## I. Background

Cypress enforces its written attendance policy largely through progressive disciplinary actions. The company may assess employees points based on the nature of the attendance issue. As relevant here, no points are assessed for absences scheduled in advance or FMLA-protected absences. A single point is assessed for a full-day, unscheduled absence or undocumented illness. A half-point is assessed for an illness documented by a doctor's note, an unscheduled "lateness," or an unscheduled "early quit." Employees receive written warnings depending on the frequency of the infractions. Accumulation of three points in any rolling three month period results in a Level I attendance warning and triggers a sixty-day period of review. An additional attendance violation of a half-point or more while on review results in a Level II warning and extends the review period by an additional sixty days; likewise, an infraction of half-point after a Level II warning results in a Level III warning and extends the review period. Certain actions, however, result in written warnings regardless of the points the employee has accumulated. For example, failure to call a manager or supervisor to explain an unscheduled absence constitutes a "no call, no show" and automatically triggers a Level II warning or advances the employee to the next level if he or she already has a written warning.

Grounds for termination based on absenteeism include: (1) accumulation of an additional half-point while on a Level III warning; and (2) accumulation of five points or more during a six-month period, regardless of attendance warning status. The policy also contains a leniency provision stating that "[a]bsences of a compelling nature will be considered in determining if the final incident is cause for termination."

Estrada worked nights as a technician on a Cypress production line from Sunday through Tuesday and every other Wednesday. On Wednesday, February 12, 2008, Estrada had a pre-operation appointment with HealthPartners Same Day Surgery Center ("HealthPartners") for an outpatient cyst-removal surgery. HealthPartners

informed her that it would call to schedule the surgery for that week or the following week. During her next scheduled shift, on Sunday, February 17, Estrada informed her supervisor that she was having "surgery" and that she would be "absent" or "sick." She testified that she requested the following Sunday off "just in case" from her supervisor, who approved the absence. She also stated that she put in a request for time off through Cypress's computer system.

The surgery was ultimately scheduled for Friday, February 22, one of Estrada's typical days off. HealthPartners issued Estrada a return-to-work slip stating she could resume work Monday, February 25 "if comfortable." On Sunday, February 24, Estrada called in "sick" for her shift. She returned to work on Monday night and left the return-to-work slip on her supervisor's desk because he was not there. She also gave a photocopy of the slip to Russ Guski, a manager. Cypress's records nonetheless list Estrada as taking a full-day, unscheduled absence on February 24. Cypress's records reveal several subsequent absences in March.

Estrada received a written Level II warning effective March 31 that forms the heart of this litigation. The warning listed the absences for which she was being disciplined, including February 24, the Sunday following her surgery. The warning form further noted that she had accumulated a total of 4.5 attendance points. Guski testified this total included a full point for the February 24 absence. The warning then cited to the provision in Cypress's policy stating that five or more points in a six-month period may result in termination and noted further violations may result in disciplinary action up to and including termination. Estrada did not challenge the point assessed for the February 24 absence in the space allotted for employee comments and signed the warning form as presented.

One of the absences was later determined to be a documented illness and mitigated accordingly, decreasing her total to four points. Guski confirmed that if the February 24 absence was not taken into account, she would have acquired only three

-3-

points by the time of the March 31 warning, resulting in a Level I rather than a Level II warning.[2]

Thereafter, Estrada had additional attendance problems. On April 14, she came to work late and subsequently left early because she aggravated an old foot injury. Estrada called in sick on April 15 for the same reason and left a message with a co-worker. She acknowledged, however, that she did not speak with a supervisor, as required, and Guski later classified the absence as a no-call, no-show. Estrada returned to work on April 16. Guski testified that he informed Estrada that morning that her job was in jeopardy and warned her against additional attendance problems, including taking extended unauthorized breaks. Later that day, she took a long break, which, according to Cypress's records, lasted about an hour when Guski testified it should have been only fifteen minutes. Estrada subsequently explained to human resources ("HR") that she left work to have lunch at Burger King and then stayed in her car "to have a smoke." Guski suspended her, according to Estrada, for "violating my Level II attendance warning."

---

[2]Cypress also characterized an absence on March 25 as a no call, no show. Estrada maintains that she did call on March 25, and that she verbally complained to Guski about it being incorrectly classified on the warning. Estrada's statements during deposition and a subsequent affidavit as to Guski's response are somewhat contradictory. In any event, the warning was not revised, and as noted above, she signed the form as-is. Guski testified that the no call, no show would have automatically resulted in a Level II warning, despite her attendance points, and that it was issued to her in part on this basis. Cypress asserts that based on the March 25 no call, no show, and the April 15 no call, no show discussed below, it had yet another non-FMLA basis for terminating her. These issues are not material to our analysis and we do not address them further in this opinion.

After sending Estrada home, Guski completed a Level III warning form, noting that Estrada was already on a Level II warning and listing the attendance problems between April 14 and April 16. Guski recommended termination and handed Estrada's case over to HR, which he testified acted as the final decision-maker.

The following day, Estrada met with HR. HR questioned her concerning the April absences, including the final incident. Estrada acknowledged to HR that she was aware her job was in jeopardy and stated she did not know why she took an extended break on April 16 when she knew she already had an attendance warning. When asked if she had any information she wished to share with HR, Estrada mentioned problems with other employees but again said nothing about the point assessed for the February 24 absence. According to Estrada, HR informed her that she was terminated for violating the Level II warning. Guski agreed with her interpretation during his deposition, elaborating that "the chain of events, she was put on attendance warning for missing work, no call, no showing. And what the final reason for her being terminated was after being counseled by me about her current status . . . she an hour later decided that she was going to take an extended break[.]"

Estrada does not dispute that she accumulated 5.5 attendance points aside from the February 24 absence at the time of her termination. As noted above, she had accumulated three other points by time of the March 31 warning. Cypress assessed her one point for the April 14 unscheduled "lateness" and "early quit" and another point for the April 15 absence. Estrada acknowledged to HR that she did not see a doctor for these absences. The long break on April 16 constituted an additional half-point, according to Guski. When asked during deposition, "What happens if someone has five points?," Guski responded "I believe they are terminated."

Estrada subsequently brought suit for interference with her FMLA rights. She claimed that the February 24 absence following her surgery was FMLA-protected and that Cypress improperly counted the absence against her in assessing her attendance. Cypress responded that the surgery did not constitute a serious health condition, that

Estrada had failed to give adequate notice of the need for FMLA leave, and that her attendance was poor enough in March and April 2008 to warrant termination regardless of her taking FMLA leave. The district court found material questions of fact existed as to whether Estrada suffered a serious health condition and whether she had provided sufficient notice. It granted summary judgment to Cypress, however, holding that even accepting Estrada's FMLA claim as true, the company had shown adequate grounds for her termination apart from that absence because she had accumulated more than five points in a six month period.

## II. Discussion

"We review the district court's grant of summary judgment *de novo*." Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 714 (8th Cir. 2008). "Viewing the evidence and drawing all inferences in favor of the non-moving party, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

The FMLA entitles an employee to twelve work-weeks of leave during any twelve-month period if she has a serious health condition that makes her unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). There are two types of claims under the FMLA: interference and retaliation. Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008). Estrada presents a claim of "interference," which occurs when an employer's action deters or attaches negative consequences to an employee's exercise of FMLA rights. See 29 U.S.C. § 2615(a)(1) (it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA); Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006).

"This court has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent." Stallings, 447 F.3d at 1050.

However, the FMLA is not a strict-liability statute. Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005). An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave. See id. Because an employee "cannot claim protection from the FMLA for disciplinary action . . . as a result of absences that are not attributable to [her] serious health conditions," sufficient unexecused absences may justify her discharge under an employer's attendance policy. Bailey v. Amsted Indus. Inc., 172 F.3d 1041, 1045–46 (8th Cir. 1999). Therefore, an employer who "interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." Throneberry, 403 F.3d at 977; see also Bacon, 550 F.3d at 715; Phillips, 547 F.3d at 911–12. Assuming, without deciding on appeal, that Estrada's February 24 absence was FMLA protected and Estrada provided adequate notice of her need for leave, we conclude Cypress has met the burden of proving it would have made the same decision to terminate her regardless of the leave.

Estrada asserts that Cypress's articulated reason for firing her at the time was based solely on her violation of the Level II warning, which improperly included the disputed absence. She further argues that Cypress has shown only that it *could* have fired her for violating the five-point rule and that it has failed to demonstrate that it actually *would* have enforced this provision against her as an alternative basis for her termination. She also notes the leniency provision in Cypress's attendance policy and maintains Cypress might have found compelling circumstances weighed against her termination. For these reasons, she asserts the district court erred in granting summary judgment to Cypress.

We disagree. Here, the Level II warning form, which Estrada signed, cited the five-points rule as grounds for termination if she continued to accumulate points. That the warning included this provision is strong evidence that Cypress took this aspect of its policy seriously in practice and that the company would have applied the provision

in her case.  Cf. Woods v. DaimlerChrysler Corp.,  409 F.3d 984, 993–94 (8th Cir. 2005) (noting plaintiff had received a verbal warning from supervisor that further violation of the employer's attendance policy could lead to discharge and concluding that employer terminated the plaintiff for continued violations, as asserted).  Guski's testimony establishes that Estrada had acquired three points by the time of that warning unrelated to her claimed FMLA-protected absence, and it is undisputed that she accumulated 2.5 more in April 2008 despite both the written Level II warning and a verbal warning the day of the final incident.  His testimony further indicates that Cypress actually and habitually enforces that policy; Estrada has pointed to no evidence that it did not.  Finally, nothing in the record suggests that Cypress would have found the circumstances warranted leniency. HR discussed the April attendance problems with Estrada.  In doing so, it specifically questioned her as to why she took a long break when she knew her job was on the line and noted that she essentially provided no explanation. In sum, the combination of these factors is sufficient here to establish that Cypress would have made the same decision notwithstanding Estrada's exercise of her FMLA rights.

For the foregoing reasons, we affirm the judgment of the district court.

_____