# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1243

_____

Johnny Chappell,

    Appellant,

v.

The Bilco Company,

    Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Arkansas.
\*
\*
\*

_____

Submitted: September 19, 2011
Filed: April 5, 2012

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Johnny Chappell was discharged from his employment with Bilco Company (Bilco) on August 10, 2007. He sued, alleging that his termination was the result of interference with and retaliation for his exercise of his rights under the Family Medical Leave Act (FMLA) and racial discrimination in violation of 42 U.S.C. § 1981. The district court[1] granted summary judgment for Bilco, and Chappell appeals. Because Chappell fails to raise a genuine issue of material fact that Bilco's actions were a pretext for discrimination, we affirm.

_____

[1]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

We state the facts in the light most favorable to Chappell. See Wierman v. Casey's Gen. Stores, 638 F.3d 984, 989 (8th Cir. 2011). Chappell, an African American, was employed by Bilco from 2002 until his termination on August 10, 2007. He worked as a machine operator in the fabrication department under his direct supervisor, Gordon Bond (hereinafter, all references to "Bond" will relate to Gordon Bond unless otherwise indicated). In 2005, Chappell filed a complaint against Bilco alleging race discrimination and violations of his rights under the FMLA. Chappell and Bilco entered a settlement agreement in July 2006.

In September 2006 Bilco amended its attendance policy to require employees to call and speak with a supervisor, as opposed to leaving a message, to report that they would be absent from work. Employees are assessed points for absences, and points are associated with disciplinary actions. The attendance policy provides that an absence results in two points unless vacation is used. The penalty increases to three points if the employee is absent and fails to call and speak with a supervisor by eight a.m. When an employee accumulates four points he receives formal counseling from a supervisor; at five points, or if four points are reached more than once, the employee is issued a written warning; at six points, or another occurrence within 90 days of a written warning, the employee is suspended; and at seven points, or another occurrence within 120 days of a suspension, the employee is terminated. For each month without an occurrence, a point is subtracted from an employee's total. Bilco held meetings to explain the new policy to employees and ensured that each employee received a copy of the policy.

On October 2 and 3, 2006, Chappell was absent from work because his mother was having hip surgery. He left a message for Bond both days, but did not speak to him directly. When he returned to work on October 4, 2006, Chappell met with Al Collins, the plant manager, and Scott Williams, the lead man in Chappell's

department. Collins confirmed that Chappell understood the attendance policy and then informed Chappell that he would be assessed three points for each of the two days he missed without speaking with a supervisor, which brought his point total to seven. Chappell then told Collins that the absences should be counted as FMLA leave and stated that Bond had told him that it was acceptable to call and leave a message, even though this contradicted the attendance policy. After questioning Bond, who denied making such a statement, Collins suspended Chappell for three days.[2]

Prior to his mother's hip surgery, Chappell requested FMLA paperwork. Bond told Chappell that he would have to get the paperwork from Cyndi Bond, Bilco's office supervisor, who gave Chappell a certification of health care provider to fill out and return. Chappell returned a certification that stated he would need to care for his mother while she recovered from surgery between October 2, 2006, and October 30, 2006. On December 4, 2006, Chappell turned in another certification stating that his mother suffers chronic hip and back pain and that she needed Chappell to drive her to her doctor's appointments.

Between October 2006 and July 2007, Chappell took FMLA leave to take his mother to doctor's appointments without being assessed points under the attendance policy.[3] Chappell also worked points off his attendance total until April 2007, when

---

[2]It is noteworthy that Collins could have terminated Chappell at this point. Chappell had one attendance point, and the additional six points brought him to the seven-point termination threshold.

[3]After his mother's 2006 surgery, Chappell took FMLA leave on October 17, 24, and 26; on November 9 and 27; and on December 13, 19, and 20. Chappell was injured on the job and off work for much of January and February 2007. He took FMLA leave on March 12 and 26; April 9; May 2 and 22; and July 9 and 30, 2007. Chappell was not assessed points for any of these FMLA absences.

he was assessed two more points. That brought his total to five, and he was issued a written warning.

On July 18 and 19, 2007, Chappell was absent from work, but he called and spoke to Gordon Bond both days. He did not mention that he was missing work to care for his mother. His mother did not have a doctor's appointment on either of these days, but she had attended a friend's funeral and she was very upset and having difficulty managing her blood sugar. Chappell, his sister, and other family members were with his mother to help her. When Chappell returned to work on July 20 he told Cyndi Bond that the absences should be covered under FMLA. Ms. Bond told Chappell that he would need to provide documentation from the doctor, as he had in the past, to avoid additional points under the attendance policy. Further, she told him that he could come in on July 23rd and speak with Collins about the matter. Because Chappell did not provide documentation by that date, Collins assessed him two points and, on July 24th, suspended him for three days. Collins informed Chappell at that time that if he provided documentation he would receive the wages lost during his suspension and the attendance points from the incident would be removed from his point total. Chappell failed to provide any documentation.

On August 2, 2007, Chappell's mother had a doctor's appointment, and he informed his supervisors that he would be missing work and needed FMLA leave. In a July 31, 2007, meeting, Chappell was told that, because production demands were high, he was expected to be at work before and after the appointment and that he should inform Bond of the appointment time so that Bond would know when to expect Chappell at work. Chappell did not inform Bond of the appointment time and was absent the entire day. Chappell was assessed one point for missing a half day not covered by FMLA; the other half was counted as FMLA leave. This incident constituted an occurrence within 90 days of Chappell's July suspension, and he was terminated on August 10, 2007.

In November 2008, Chappell filed this suit, alleging violations of the FMLA, the Arkansas Civil Rights Act, and 42 U.S.C. § 1981. This district court granted Bilco's motion for summary judgment on all claims, and Chappell appeals his claims under the FMLA and § 1981.

## II.

We review a grant of summary judgment *de novo*, "viewing all evidence and drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party." Wierman, 638 F.3d at 993 (citing Hitt v. Harsco Corp., 356 F.3d 920, 923-24 (8th Cir. 2004)). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing Fercello v. County of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010)).

## III.

An employee can make two types of FMLA claims. In an interference claim "the employee alleges that an employer denied or interfered with his substantive rights under the FMLA," and in a retaliation claim "the employee alleges that the employer discriminated against him for exercising his FMLA rights." Phillips v. Matthews, 547 F.3d 905, 909 (8th Cir. 2008) (quoting Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006)). Chappell makes both claims.[4]

---

[4]We note that we have recently reaffirmed our circuit's jurisprudence with regards to the differences between FMLA interference and retaliation claims in Lovland v. Employers Mutual Casualty Co., No. 11-2076, 2012 WL 878564, at *4 (8th Cir. Mar. 16, 2012).

An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). Interference with FMLA rights includes "manipulation by a covered employer to avoid responsibilities under FMLA." Stallings, 447 F.3d at 1050 (quoting 29 C.F.R. § 825.220(b)). Although an employee "can prove interference with an FMLA right regardless of the employer's intent," the FMLA "is not a strict-liability statute." Estrada v. Cypress Semiconductor, Inc., 616 F.3d 866, 871 (8th Cir. 2010) (citing Stallings, 447 F.3d at 1050; Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 977 (8th Cir. 2005)); see also Lovland v. Emp'rs Mut. Cas. Co., No. 11-2076, 2012 WL 878564, at *4-5 (8th Cir. Mar. 16, 2012) (affirming dismissal of an FMLA interference claim alleging that use of FMLA leave was a negative factor in a termination decision, and holding that the claim would fail at the summary judgment stage for lack of proof of discriminatory intent).

Chappell alleges that Bilco interfered with his rights under the FMLA in the October 2006, July 2007, and August 2007 incidents. Bilco counters that Chappell was assessed points in each incident for violating the company's attendance policies, not for exercising his rights under the FMLA.

First, Chappell contends that Bilco interfered with his FMLA rights when it assessed him six points for his absences on October 2 and 3, 2006. Bilco argues that it assessed points for Chappell's failure to call and speak with a supervisor, as required by the attendance policy. A company may take action against an employee for violating the company call-in policy when the employee is on FMLA leave. See Bacon v. Hennepin Cnty. Med. Ctr., 550 F.3d 711 (8th Cir. 2008) (upholding an employee's termination for failure to call in while on FMLA leave).

Chappell claims that Bond lied to him and told him he could leave a message. Chappell further claims that the lie was motivated by racial animus and Chappell's previous lawsuit against Bilco. Any such lie based upon these reasons would be

-6-

relevant in analyzing Chappell's retaliation claims. It would not, however, constitute interference under the FMLA. An FMLA interference claim occurs "when an employer's action deters or attaches negative consequences to an employee's exercise of FMLA rights." Estrada, 616 F.3d at 871 (citing 29 U.S.C. § 2615(a)(1)). But the negative consequences of Chappell leaving a message rather than speaking to Bond directly would attach any time Chappell left a message, not only when the absence was covered under the FMLA. Although we will examine the alleged lie in more detail in our retaliation analysis below, we conclude that it did not constitute interference with Chappell's exercise of his FMLA rights.

Second, Chappell argues that Bilco's denial of his request for leave to care for his mother on July 18 and 19, 2007, interfered with his rights under the FMLA. "A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave . . . ." Rynders v. Williams, 650 F.3d 1188, 1196 (8th Cir. 2011) (quoting Woods v. DaimlerChrysler Corp., 409 F.3d 984, 991 (8th Cir. 2005)). Adequate notice requires "enough information to put the employer on notice that the employee may need FMLA leave." Id. (quoting Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000)). An employer may require that a request for leave is supported by certification from a health care provider. 29 U.S.C. § 2613(a).

Chappell called and spoke with Bond on the 18th and 19th but did not tell Bond that he was missing work to care for his mother. When Chappell returned to work he told Cyndi Bond that the days should be counted as FMLA leave. Bilco's previous FMLA certification for Chappell's mother covered only the need for Chappell to transport her to doctor's appointments. Because Chappell's mother did not have a doctor's appointment on July 18 or 19, the previous certification did not cover Chappell's absence. Bilco had no notice that Chappell was needed to help care for his mother due to her diabetes, or that she even suffered from diabetes. As set forth above, Collins nevertheless offered to reimburse Chappell for lost wages from

his suspension and take away the points he was assessed if he brought in documentation for the absence, which Chappell failed to do. Because Chappell failed to provide Bilco with adequate and timely notice of his need for FMLA leave, we conclude that this claim also does not amount to interference under the FMLA.

Finally, Chappell contends that the point assessed to him on August 2, 2007, the incident that resulted in his termination, interfered with his FMLA rights. In this incident Chappell had been told in a meeting several days before the relevant doctor's appointment that he would be expected to come to work before and after he took his mother to her appointment because production demands were high. He was asked to inform Bond of the appointment time so that Bond would know when to expect him. Chappell did not inform Bond of the appointment time and missed the entire day. Bilco assessed Chappell one point, not two, and counted half of the missed day as FMLA leave and half as an absence under the attendance policy. Because Chappell was assessed points in each of these incidents under the attendance policy, and not for exercising his rights under FMLA, we affirm the grant of summary judgment in favor of Bilco on the interference claim.

B.

Next, Chappell alleges that Bilco retaliated against him for exercising his FMLA rights. First, he argues that he was not given cross-training and was moved from one machine-operator position to another in retaliation. Second, he argues that his termination was retaliation. Absent direct evidence, Chappell's FMLA retaliation claims are evaluated under the McDonnell Douglas burden-shifting framework. Wierman, 638 F.3d at 999 (citing Phillips, 547 F.3d at 912). To establish a prima facie case, Chappell must show that 1) he engaged in protected conduct; 2) he suffered a materially adverse employment action; and 3) the materially adverse action was causally linked to the protected conduct. Id. If Chappell establishes a prima facie case, the burden shifts to Bilco to "promulgate a non-discriminatory, legitimate

justification for its conduct," and then back to Chappell to "either introduce evidence to rebut the employer's justification as a pretext for discrimination, or introduce additional evidence proving actual discrimination." Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1111 (8th Cir. 2001) (citations omitted).

Chappell cannot establish the second element of a prima facie case to show that Bilco's cross-training policies or his move from one machine-operator position to another constituted an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Wedow v. City of Kansas City, Mo., 442 F.3d 661, 671 (8th Cir. 2006) (quoting Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005)). "'Mere inconvenience without any decrease in title, salary, or benefits' or that results only in minor changes in working conditions does not meet this standard." Id. (quoting Sallis, 408 F.3d at 476).

Neither the cross-training nor the move constituted a material adverse employment action. First, Bilco has no formal cross-training program, and between August 2006 and Chappell's termination in August 2007 cross-training was restricted because of production demands. Simply put, when Bilco had more work to get done it spent less time cross-training employees. Chappell had more cross-training than some other employees in his department and less than others. There is no indication that he was deprived of training. Second, Chappell's pay and benefits were not affected by the new duty assignment. Chappell's preference for his old assignment does not create a material adverse employment action, and the move is better described as a "mere inconvenience" or "minor change." Thus, Chappell did not establish a prima facie case of retaliation on these claims.

Chappell is also unable to overcome his burden to show that Bilco's justification for his termination is a pretext. Assuming Chappell established a prima facie case with respect to his termination, he must then overcome Bilco's response

that he was terminated for violations of the attendance policy. Chappell must prove more than the prima facie case to show pretext, "because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." Sprenger, 253 F.3d at 1111 (citing Stuart v. Gen. Motors Corp., 217 F.3d 621, 635-36 (8th Cir. 2000)). After an employer has articulated a legitimate reason for its action, "the burden shifts back to the plaintiff to 'identify evidence sufficient to create a genuine issue of material fact whether [the employer's] proffered explanation is merely a pretext for unlawful retaliation.'" Blakely v. Schlumberger Tech. Corp., 648 F.3d 921, 934 (8th Cir. 2011) (quoting Wierman, 638 F.3d at 999).

Chappell argues that Collins and Bond had knowledge of his previous lawsuit and took action against him in retaliation. Knowledge of a previous lawsuit, however, does not prove causation. See, e.g., Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826-27 (8th Cir. 2006) (four-month time span between filing of discrimination lawsuit and disciplinary hearing not enough to establish causation); Sims v. Sauer-Sundstrand Co., 130 F.3d 341, 344 (8th Cir. 1997) (not being hired or interviewed for a position after an Equal Employment Opportunity Commission filing is not enough to prove causation). It is also undisputed that three other Bilco employees, who had not filed lawsuits against the company, had been disciplined in September 2006 under Bilco's new attendance policy. Furthermore, Chappell's unchallenged use of FMLA leave on numerous other occasions is supportive of Bilco's explanation that Chappell incurred disciplinary action only when he violated the attendance policy. Because Chappell has not identified sufficient evidence of pretext in light of Bilco's justification for his termination, the district court did not err in granting summary judgment on the FMLA retaliation claim.

IV.

Chappell alleges that he was discriminated against based on his race in violation of 42 U.S.C. § 1981 and retaliated against for his previous complaints of racial discrimination. Chappell's race discrimination claims are also evaluated under the McDonnell Douglas burden-shifting framework. See Gordon v. Shafer Contracting Co., Inc., 469 F.3d 1191, 1196 (8th Cir. 2006). To establish a prima facie case of racial discrimination Chappell must demonstrate that 1) he is a member of a protected class; 2) he was meeting his employer's legitimate expectations; 3) he suffered an adverse job action; and 4) similarly situated employees who were not part of the protected group were treated more favorably. See id. (laying out elements with respect to a non-hire claim).

Bilco conceded the first three elements of the prima facie case for purposes of summary judgment, but Chappell has not shown that other similarly situated employees were treated more favorably. A plaintiff can prove the fourth element "by putting forth facts that similarly situated employees, who are not African-American, were treated differently." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850-51 (8th Cir. 2005), abrogated on other grounds by Torgerson, 643 F.3d 1031. As we noted in Rodgers, two lines of cases in our Circuit have developed two standards for determining whether other employees are "similarly situated." Id. One requires that "the employees 'are involved in or accused of the same or similar conduct and are disciplined in different ways,'" while the other requires that the employees be "similarly situated in all respects." Id. (citations omitted).

"[W]hen faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels creating the conflict.'" Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (citations omitted). In Myers v. Ford Motor Co., we first stated the standard, "similarly situated in all relevant respects," for comparators at the prima facie stage. 659 F.2d 91, 93

-11-

(8th Cir. 1981). This standard was purportedly narrowed in 2003 to "similarly situated in all respects." Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003). The Rodgers court identified a conflicting line of cases that focus on "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994) (citing Boner v. Bd. of Comm'rs, 674 F.2d 693, 697 (8th Cir. 1982)). Whatever the subsequent divergence in our holdings, our first articulation of this standard stated, "What is relevant [in determining whether two employees are similarly situated] is that two employees are involved in or accused of the same offense and are disciplined in different ways." Boner, 674 F.2d at 697 (alterations in original) (citing Rohde v. K.O. Steel Castings, Inc., 649 F.2d 317, 322 (5th Cir. 1981)). Thus, the earliest panel opinion that we must follow requires us to consider whether the comparators are "similarly situated in all relevant respects," and a year later, in Boner, another panel refined that precedent, clarifying that the relevant respects are the conduct of the employees and any disparity in their discipline. See Rodgers, 417 F.3d at 856-59 (Colloton, J., concurring in the judgment).

Chappell has not demonstrated that similarly situated employees were treated more favorably. In support of his allegations, Chappell provides attendance calendars for other Bilco employees and contends that these employees were treated more favorably under the attendance policy. Chappell does not indicate, however, whether the absences were covered under any other leave policy at Bilco, whether the other employees worked in his department, how long the employees had worked at Bilco, or offer any evidence demonstrating what disciplinary action the other employees received. Several of the incidents Chappell points to occurred prior to September 2006 and the adoption of the attendance policy at issue in this case. We do not know whether these employees committed the "same offense" that Chappell did under the attendance policy, and we do not know how these other employees were disciplined.

-12-

Chappell's only other evidence of discrimination comes from his 2006 deposition in his previous lawsuit, in which he alleges that his coworkers, including his supervisor, Bond, made racial comments about African Americans.[5] When racial comments and an adverse employment decision are not close in time, the plaintiff must establish a causal link. Simmons v. Oce-USA, Inc., 174 F.3d 913, 916 (8th Cir. 1999) (citing Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779 (8th Cir. 1995)). Chappell has not established a causal link. Additionally, Chappell's testimony in his 2009 deposition taken for this case suggests that the workplace conditions he previously complained of had been addressed:

> Q.   With respect to your previous lawsuit, did you feel like you were in a discriminatory environment like a hostile work environment during the period leading up to your first lawsuit?
> A.   Yes.
> Q.   Just because people stopped using racial slurs, do you feel like they've changed the way they felt about race issues?
> A.   Yes.

Chappell has not presented any evidence of racial animus or racial comments subsequent to the July 2006 settlement of his prior lawsuit against Bilco.

Even if we were to conclude that Chappell had established a prima facie case of discrimination or retaliation, the evidence described above would not be sufficient

---

[5]Chappell also asserts that the low percentage of black employees at Bilco, 2% to 5%, is evidence of discrimination because Bilco is located in Poinsett County, which has a 7.5% black population, and two nearby counties have black populations of 10% and 34%. "It is the plaintiff's responsibility to produce a meaningful statistical comparison." Miller v. Weber, 577 F.2d 75, 77 (8th Cir. 1978). Chappell has failed to provide any context or analysis to support these statistics, which are "indefinite and incomplete." Id.

to prove pretext in light of Bilco's contention that Chappell was terminated for violations of the attendance policy. Chappell shows neither evidence supporting a causal link between his termination and racial discrimination nor his termination and retaliation for previous complaints. "[T]o survive summary judgment, [the plaintiff] must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions." Sprenger, 253 F.3d at 1110 (quoting Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 717 (8th Cir. 2000)). Chappell has not met that burden.

Chappell's reliance on Staub v. Proctor Hospital, 131 S. Ct. 1186 (2011), does not salvage his retaliation claims under either the FMLA or § 1981. Chappell contends that Bilco is responsible for the lie Bond told him about the call-in policy even though it was Collins who actually terminated his employment.

Chappell's case differs from the situation in Staub. Staub's supervisor was hostile toward his military obligations, and even asked one of Staub's co-workers to help her "get rid of him." Staub, 131 S. Ct. at 1189. Staub was terminated based on a violation of a corrective action, which was reported to the vice president of human resources, who then fired Staub. Id. Staub contended that the corrective action dealt with a company rule that did not exist and which he did not violate. Id. The Supreme Court held that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." Id. at 1194 (footnotes omitted).

Chappell argues that Bond was motivated by racial animus, but he has nothing to support that assertion. Where Staub had specific evidence of anti-military sentiment voiced by his supervisor, Chappell has admitted under oath that negative racial comments in his workplace had ceased. Where Staub was terminated after one

-14-

violation of a corrective action that was specific to him, Chappell was terminated after three incidents of violating a company-wide attendance policy. In sum, Chappell's testimony that the racially hostile environment had abated since his first lawsuit was settled and his numerous uses of FMLA leave without negative consequences support Bilco's non-discriminatory and non-retaliatory justification for Chappell's termination.

V.

The judgment is affirmed.

_____

-15-