# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2643

_____

Karen Beckley

*Plaintiff - Appellant*

v.

St. Luke's Episcopal-Presbyterian Hospitals, doing business as St. Luke's Hospital

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2019
Filed: May 16, 2019

_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Karen Beckley sued her former employer, St. Luke's Episcopal-Presbyterian Hospitals ("St. Luke's"), for allegedly interfering with her rights under the Family

and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. The district court[1] granted summary judgment in favor of St. Luke's, and we affirm.

## I.    Background

When reviewing the district court's grant of summary judgment, we recite the facts in the light most favorable to Beckley. St. Luke's hired Beckley in 1995 to work as a surgical technician. A surgical technician's principal duty is to pass instruments in the operating room. Beckley began working in the Labor & Delivery Department. In October 2012, St. Luke's promoted Beckley to a full-time position in the Operating Room Department ("ORD"). The job description summarized that the surgical technician was expected to "[p]erform[] in the scrub role during surgical procedures, following all established Nursing Standards and Hospital Policies." When Beckley was promoted, she was already on intermittent FMLA leave, and St. Luke's understood that Beckley would need to take additional FMLA leave. St. Luke's approved Beckley's requests for intermittent FMLA leave while in the ORD during the following time periods:[2] from August 2012 through February 2013; from February 2013 through August 2013; and from April 2014, through April 20, 2015. St. Luke's terminated Beckley's employment on March 20, 2015.

Beckley's departmental change to the ORD included a change in some of her job responsibilities, including "on-call" shifts. An on-call shift required the employee to be accessible while off-duty during the shift. During an on-call shift, an employee

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

[2]There is no claim that St. Luke's ever denied a request from Beckley to take FMLA leave. Sometimes Beckley took consecutive leave during these periods, including, for example, from December 31, 2014, through January 19, 2015.

was to report to work within approximately 30 minutes of receiving an emergency call-in.

St. Luke's reprimanded Beckley on multiple occasions for failing to respond appropriately to emergency call-in requests. On March 10, 2014, Beckley received a Level 1 warning for failing to respond to messages left on her cell phone and pager. Because of Beckley's failure to respond, St. Luke's was forced to contact the second on-call employee for the emergency. Beckley admitted that this reprimand was unrelated to her taking FMLA leave. On August 12, 2014, Beckley received a Level 2 warning for not responding appropriately to a call-in request. Beckley did not respond to the initial call-in message, but responded to the second contact approximately 35 minutes later. On August 25, 2014, Beckley received a Final Warning for failing to respond to an emergency call-in request. St. Luke's contacted another surgical technician for the emergency. As a consequence, St. Luke's prohibited Beckley from signing up for additional on-call shifts because of her repeated failures to respond appropriately when contacted. Each time Beckley was reprimanded, St. Luke's counseled her on appropriate on-call procedures and the ORD's expectations. St. Luke's informed Beckley each time that any additional occurrences may result in further disciplinary action, including discharge. Each disciplinary action involved a different charge nurse, none of whom played any role in Beckley's termination.

In addition to the formal disciplinary actions, Beckley was counseled about other issues related to her work. On March 13, 2014, St. Luke's talked to Beckley about being inattentive to details. Beckley was reminded that she needed to focus more and talk less during surgical procedures. Beckley admitted this criticism of her work performance was unrelated to her FMLA leave. During her annual job evaluation on March 30, 2014, St. Luke's suggested Beckley keep a notebook and preference cards for the doctors so that she could focus on her role as technician and decrease the amount of talking and repetitive questioning during the procedure.

According to Beckley's personnel file, on April 7, 2014, St. Luke's again discussed with Beckley the need to focus on the task at hand. She was also coached about having accurate surgical counts.

Beckley, although not formally disciplined for improperly labeling a syringe, acknowledged that it was her responsibility and "a big deal." On July 25, 2014, while precepting a student, Beckley mislabeled a syringe, which was handed to the surgeon during the procedure. The syringe contained a medication rather than the saline solution the surgeon needed for a flush. Beckley admitted the mistake was serious and described the event as one where "the whole [operating] room was involved" and aware of her error.

Less than seven months after being given a final warning, on March 9, 2015,[3] during a complicated surgical procedure, Beckley became contaminated while in the operating room when she touched a non-sterile object. Beckley recognized immediately that she broke sterility, but did not immediately change her gown or gloves. During the procedure, Beckley left the operating room to use the bathroom without letting the surgeon know. During the restroom break, Beckley had a conversation with a co-worker about the co-worker's upcoming facelift surgery. Beckley denied that this conversation delayed her return to the operating room. Before re-entering the operating room, Beckley had the option of sterilizing with a gel or re-scrubbing. Beckley chose to re-scrub, a ten-minute process, rather than use the gel, a two-or three-second process. By the time Beckley returned to the operating room, an estimated 10 to 15 minutes had elapsed. There was an additional employee who entered the operating room during Beckley's absence to assist with the procedure. After the surgery, the Director of Surgical Services received reports from both nurses who were in the operating room indicating Beckley broke sterility by

---

[3]The March 10, 2015, date on the termination notice is incorrect. It is undisputed that the date of the surgery was March 9, 2015.

walking to the sterile field twice while contaminated, she failed to break scrub according to Association of Perioperative Registered Nurse guidelines, she exercised poor judgment in conducting a surgical count during the procedure, and she left the operating room while the procedure was ongoing for an extended amount of time without letting anyone know of her need to leave. Beckley denied that she entered the sterile field while contaminated. She admitted that she was gone from the operating room for at least 15 minutes, but denied that another person entered the room to assume her role.

Beckley attributed the complaints about her work performance from co-workers and her supervisor to be because of her increased FMLA leave. She asserted that one of her co-workers told her that she "needed to watch herself" with regard to her FMLA usage. Beckley viewed a supervisor's inquiry about whether she could schedule doctor's appointments during off-duty hours as a complaint or concern about her FMLA leave usage. Beckley believed it was because of her FMLA leave that she was being treated differently than other employees for what she viewed as minor infractions. Beckley brought this FMLA retaliation claim against St. Luke's, asserting she routinely suffered adverse employment actions following the exercise of FMLA leave.

Without direct evidence of retaliation, the district court analyzed Beckley's claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The court decided that Beckley's temporal proximity claim was insufficient to establish a causal connection to the disciplinary actions or termination and, therefore, she could not establish a *prima facie* case of retaliation. The court went on to find that St. Luke's proffered a legitimate, nondiscriminatory reason for Beckley's termination and that Beckley had failed to establish pretext.

## II.     Discussion

We review the grant of summary judgment *de novo*, viewing the facts and drawing all inferences in the light most favorable to Beckley, the non-moving party. RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc., 793 F.3d 903, 906 (8th Cir. 2015). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may affirm on any basis supported by the record. Holt v. Howard, 806 F.3d 1129, 1132 (8th Cir. 2015) (quoting Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir. 2013)).

The FMLA prohibits an employer from taking adverse action against an employee because the employee exercises a right to which she is entitled. Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005–06 (8th Cir. 2012). Taking FMLA leave, however, does not give an employee greater protections against termination for reasons unrelated to the FMLA than was available before. Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010). In other words, termination is actionable under the FMLA only if the employee was discharged because of her FMLA leave. Id. To proceed with her claim, Beckley must present sufficient evidence for a jury to find that her termination was motivated by her exercise of rights under the FMLA. Pulczinski, 691 F.3d at 1007.

Beckley argues that she established a submissible FMLA retaliation claim, relying on evidence of (1) the temporal proximity of the exercise of her FMLA rights to the disciplinary actions and ultimate termination, and (2) St. Luke's more lenient treatment of other employees who did not exercise rights under the FMLA. Assuming without deciding that Beckley established a *prima facie* case, her FMLA retaliation claim fails because she cannot establish her termination was motivated by the exercise of FMLA rights.

Beckley used FMLA leave frequently with no negative consequences from October 2012, when she started working in the ORD, until March 10, 2014, when she received a Level 1 warning.[4] Beginning on March 10, 2014, St. Luke's documented Beckley's failure to follow on-call policy and other work performance issues. She was counseled about St. Luke's expectations and how she was failing to meet expectations on March 10, 2014; March 13, 2014; March 30, 2014; April 7, 2014; July 25, 2014; August 12, 2014; August 25, 2014; December 4, 2014; and January 21, 2015. On three of these occasions Beckley was given written warnings, each time being put on notice that additional occurrences could lead to her termination.

Beckley's alleged mistreatment by St. Luke's supervisors, including holding her to a different standard than other employees, scrutinizing her work more closely, failing to correct or address a co-worker's comment about her FMLA leave usage, inquiring whether she could schedule doctor's appointments during off-duty hours, and asking if paperwork received by facsimile was "FMLA too," without evidence of tangible injury or harm is not actionable under the FMLA. Hasenwinkel v. Mosaic, 809 F.3d 427, 434 (8th Cir. 2015). The FMLA is not "a general civility code for the American workplace." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)). Beckley's complaints involve the sort of "petty slights or minor annoyances," referenced by the Supreme Court in Burlington N, 548 U.S. at 68, that although frustrating to an employee, do not give rise to a cognizable FMLA claim.

In the end, Beckley's case consists of an unpersuasive argument of temporal proximity combined with her subjective belief that she was being treated differently and a few stray comments that she perceived to interfere with her FMLA rights. Beckley's evidence does not undermine or even raise a genuine issue of material fact

[4]The record is silent as to negative consequences, if any, while on FMLA leave during the 17-year period Beckley worked in the Labor and Delivery Department.

regarding St. Luke's legitimate, nondiscriminatory reasons for her termination. Beckley has not presented a submissible case of retaliation for exercising her FMLA rights.

## III.   Conclusion

The judgment of the district court is affirmed.

_____