# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3617

_____

Felicia Gossett

*Plaintiff - Appellant*

v.

Jason's Deli

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 10, 2025
Filed: August 26, 2025

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

After she was fired, Felicia Gossett sued Jason's Deli for pregnancy discrimination and retaliation, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev.

Stat. § 48-1101 *et seq.* The district court[1] granted summary judgment in favor of Jason's Deli. Gossett appeals, seeking reversal on the NFEPA pregnancy discrimination claim. We affirm.

Gossett was a manager at Jason's Deli. In early March 2022, she told her direct supervisor, Spencer Bath, and the human resources department that she was pregnant and asked to use a chair when her feet were swollen. Gossett also asked Bath for the following accommodations: (1) five-to-ten-minute breaks every two hours, (2) an exemption from tasks involving heavy lifting, and (3) no shifts longer than ten hours. Jason's Deli approved the requests.

During the first week of May, the manager scheduled to relieve Gossett called in sick. Although Gossett's scheduled shift originally complied with the ten-hour accommodation, Bath told her that she had to work a few more hours because no other manager was available. This increased her shift to twelve-and-a-half hours. In exchange, Bath offered her paid time off that would not count against her vacation hours. Gossett worked the extra time and was given the next day off with pay. Gossett sent an email to human resources, copying her future supervisor Michael Wallin, saying that after the long shift she was "in pain the rest of the night because we were busy and understaffed and I pushed myself entirely too hard . . . I understand being there for the deli, but I also cannot miscarry this baby."

Wallin became Gossett's direct supervisor in mid-May. On May 27, Gossett texted Wallin: "My body is in a lot of pain. I pushed myself too hard this week. I'm popping Tylenol as much as I'm allowed to and it's barely taking the edge off. I'm not going to be able to work tomorrow like this." Gossett did not work the next day. She also did not work her shifts on June 10, 14, and 15 because of car problems. Wallin wrote Gossett up for these missed shifts in a disciplinary action report. Also, around this time, Gossett disclosed employee wage information to another

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

employee, in violation of Jason's Deli's policies. When Wallin asked her about it, Gossett denied disclosing the information.

After a busy lunch rush on June 23, employees complained to Wallin that Gossett had spent most of her shift in the office, rather than working the counter. Gossett told Wallin that she had been documenting a work injury and reviewing policies associated with pregnancy leave. But when Wallin retrieved Gossett's internet history, it showed that she had been paying her bills and looking at her medical records. Wallin believed Gossett had lied about how she spent her time that shift and terminated Gossett on July 1 for "[n]umerous issues as previously documented; ultimately, lying during the scope of an investigation." Gossett sued, claiming that Jason's Deli's reasons for firing her were pretext and that the real reason was her pregnancy.

We review the district court's grant of summary judgment *de novo*, viewing the facts and drawing all inferences in the light most favorable to Gossett. *Beckley v. St. Luke's Episcopal-Presbyterian Hosps.*, 923 F.3d 1157, 1160 (8th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Nebraska law, it is illegal to "[d]iscriminate against an individual who is pregnant." Neb. Rev. Stat. § 48-1107.01(2). Discrimination includes "[n]ot making reasonable accommodations to the known physical . . . limitations" of a pregnant woman. § 48-1107.02(2)(e). To prove a pregnancy failure-to-accommodate claim, a plaintiff must show in part that she was pregnant and that she requested "a specific reasonable accommodation." *See Doe v. Bd. of Regents of Univ. of Neb.*, 846 N.W.2d 126, 146–48 (Neb. 2014) (considering a discrimination claim under the Americans with Disabilities Act (ADA)); *see also Powley v. Rail Crew Xpress, LLC*, 25 F.4th 610, 613 (8th Cir. 2022) (explaining that Nebraska state courts consider ADA precedent when interpreting the NFEPA). The defendant is

then "obliged to rebut the plaintiff's claim by presenting evidence that the plaintiff's requested accommodation imposes an undue hardship." *Id.* at 148.

Jason's Deli did not accommodate Gossett's pregnancy-related request to limit shifts to ten hours when it required her to work a longer shift in early May. But Jason's Deli argued that the accommodation would have imposed an undue hardship to its business because Gossett was the only manager available to work extra hours and keep the deli open that day. While Gossett showed a failure to accommodate, she does not dispute Jason's Deli's undue hardship so her claim fails.

Gossett also argues that Jason's Deli failed to accommodate her when it did not excuse her May 28 absence and then included the absence in a disciplinary report. To succeed in a failure-to-accommodate claim, a plaintiff must identify a "specific reasonable accommodation" that she requested for her pregnancy. *See Doe*, 846 N.W.2d at 148. The plaintiff need not use "the magic words 'reasonable accommodation,'" but the request "must make clear that the employee wants assistance for her [pregnancy]." *Powley*, 25 F.4th at 612 (cleaned up) (citation omitted).

Gossett claims that her May 27 text message to Wallin was an accommodation request. But it only said that she would not work on May 28 because she pushed herself too hard, was in pain, and Tylenol wasn't helping. She claims that Wallin should have known that her pain was pregnancy-related, but even if that is true, the text message does not identify a "specific reasonable accommodation," *Doe*, 846 N.W.2d at 148, nor does it "make clear" that Gossett was asking for an excused absence because of her pregnancy, *Powley*, 25 F.4th at 612. The text message is unlike Gossett's previous, specific pregnancy-related requests for accommodation, all of which were approved. And like the request in *Powley*, Gossett's message "did not demonstrate that she requested accommodations or assistance for her alleged disability" because the text message "did not suggest that her request was based on medical needs" related to her pregnancy. *Id.* at 613. Because her May 27 text

-4-

message does not request a specific accommodation for her pregnancy, Gossett's NFEPA claim fails.  *See id.*

Affirmed.

ERICKSON, Circuit Judge, concurring specially.

I concur specially in the opinion of the Court.  I agree with the Court that when viewing the facts and drawing all inferences in the light most favorable to Gossett, her NFEPA pregnancy discrimination claims fail.  The record shows Gossett accepted her supervisor's request to work an additional two-and-a-half to three hours in exchange for eight hours of paid time off the next day.  She has not provided authority demonstrating that her decision to forgo the shift-limit accommodation that Jason's Deli approved previously can be used later as the basis for a discrimination claim.  Similarly, even if the text message Gossett sent to Wallin on May 27 was sufficient to demonstrate a request for a pregnancy-related accommodation, this request accounts for only one day out of the four days listed in the disciplinary notice.  The record contains evidence showing Gossett's termination was because she was an unreliable employee, an assertion that is supported and unrebutted in the record.  See Marshall v. Eyecare Specialties, P.C. of Lincoln, 876 N.W.2d 372, 386 (Neb. 2016) (applying the McDonnell Douglas burden-shifting framework in a failure-to-accommodate case).  For these reasons, I would affirm the grant of summary judgment.

_____